## FRENCH *v.* TAYLOR.

### ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 57.   Argued November 8, 1905.—Decided November 27, 1905.

Where the validity of a state revenue statute itself is not drawn in question, but plaintiff in error contends that he was denied due process of law because state officers acting thereunder did not fully comply with the statute, only questions of local law and fact are involved and the determination of the state court is not reviewable on writ of error by this court.

It is too late to raise Federal questions on petition for rehearing to the highest court of the State unless the petition is entertained and the point passed on.

THIS was a suit to quiet title to certain real estate, brought in the Superior Court of King County, Washington, by Sarah Woodward and Sarah Woodward as executrix of Henry S. Woodward, against H. C. Taylor and others. Sarah Woodward resigned her letters as executrix and John H. McGraw was appointed administrator with the will annexed, and thereupon was made a co-plaintiff. The Superior Court entered

a decree of dismissal and plaintiffs took the cause by appeal to the Supreme Court of Washington, which affirmed the judgment. 33 Washington, 1. A petition for rehearing was filed and denied. 33 Washington, 11. Henry French was substituted as appellant and he brought this writ of error.

The case is stated by the Supreme Court thus:

"Several causes of action are alleged in the complaint. Each cause is to set aside a separate deed to the property in question. It is necessary to notice only the first cause alleged. For some time prior to the year 1891, Sarah Woodward was a non-resident of the State of Washington, and is still such non-resident. She was the owner of lot 8, in block 11, Maynard's plat of the city of Seattle. This property was assessed for general, state, and county taxes for the year 1891 in the name of C. Winehill. It does not appear that the taxing officers knew, when the assessment was made, that the property belonged to Mrs. Woodward. Subsequently the taxes for that year became delinquent, and the property was sold in 1894, under the provisions of the revenue act of 1893. The county of King became the purchaser. Subsequently the county transferred the certificate of sale to the respondents, who thereafter obtained a tax deed. At the trial of the cause the lower court held that this tax deed conveyed a valid title, and dismissed the action. The points relied upon by appellant to secure a reversal are that the property was not assessed in the name of the owner, that no notice of the sale, or of the expiration of the time of redemption, or of the application for a deed, was given to the owner, and that, therefore, the respondents acquired no title to the land by virtue of the sale and tax deed."

*Mr. Twyman O. Abbott* for plaintiff in error:

*Mr. Richard Saxe Jones*, with whom *Mr. Jefferson Chandler* and *Mr. William H. Brinker* were on the brief, for defendants in error;

Mr. Chief Justice Fuller, after making the foregoing statement, delivered the opinion of the court.

We understand it to be conceded, as it must be, that no Federal question was raised on the record prior to judgment unless by the eleventh clause of paragraph V of the first cause of action set forth in the complaint. The paragraph asserted in substance the invalidity of the tax deed in that the names of the real owners of the property were not given and the name of a person was given as owner who was not such; that the return of the assessor was insufficient; that the certificate of the county auditor was not attached to each book containing the tax list; that the delivery of the assessment rolls to the county treasurer was not strictly in compliance with law; that the names of the real owners were not given in the "Tax Judgment Sales, Redemption, and Forfeiture Record;" that the certificate of purchase was insufficient; that personal notice of the application for the tax deed was not given; that the affidavit of notice was insufficient; that Taylor had not paid all the previous taxes; that the signature to the tax deed was not sufficient. Copies of certificates, affidavits, etc., were set out with these specifications.

Then followed subdivision eleven: "That all the proceedings in this paragraph hereinbefore enumerated, was and were in violation of Article V, and the first section of Article XIV of the amendments to the Constitution of the United States, and of section eleven of article I of the constitution of the State of Washington, in this: That they constituted an attempt to deprive plaintiffs of their property without due process of law."

The second class of cases in which the judgments and decrees of state courts may be reexamined here under § 709, Rev. Stat., consists of those "where is drawn in question the validity of a statute of, or an authority exercised under any State, on the ground of their being repugnant to the Constitution, treaties, or laws of the United States, and the decision is in favor of

their validity." Clause eleven, thrown into paragraph V, does not allege that the tax acts of the State of Washington for 1889, 1890, 1891 or 1893 are in themselves in conflict with the Constitution of the United States. Their validity was not drawn in question. Nor was the validity of an authority exercised under the State of Washington, for the power to hear and determine cases, is not the kind of authority referred to. *Bethell* v. *Demaret*, 10 Wall. 537. It is certain acts of county officers and of defendants in error that are attacked by the clause as unconstitutional.

Indeed, counsel for plaintiff in error says in his brief that he does not contend " that the act itself is not sufficient to give due process," but he insists " that the manner of observance of that act is want of due process;" in other words, that the statutes had not been complied with. But the state Supreme Court held that the acts provided for taxation *in rem;* that notice was given as required; that giving the name of the owner was not essential to the validity of the assessment, and that the county officers and defendants in error had fully complied with the laws. So that subdivision eleven, in attacking the proceedings, only objects to the determination of questions of local law or of fact, not in themselves reviewable here. *Castillo* v. *McConnico*, 168 U. S. 674, 683; *Leigh* v. *Green*, 193 U. S. 79.

In *Castillo* v. *McConnico*, in which it was held that it was not the province of the court to interfere with the policy of the revenue laws of the State, nor with the interpretation given to them by their courts, and that an assessment could not be regarded as not constituting due process of law within the Fourteenth Amendment because of error as to the name of the owner, if the state law might have dispensed with any requirement of mention of the name, Mr. Justice White said:

"The vice which underlies the entire argument of the plaintiff in error arises from a failure to distinguish between the essentials of due process of law under the Fourteenth Amendment, and matters which may or may not be essential under the terms of a state assessing or taxing law. The two are

neither corelative or coterminous. The first, due process of law, must be found in the state statute, and cannot be departed from without violating the Constitution of the United States. The other depends on the lawmaking power of the State, and as it is solely the result of such authority may vary or change as the legislative will of the State sees fit to ordain. It follows that, to determine the existence of the one, due process of law, is the final province of this court, whilst the ascertainment of the other, that is, what is merely essential under the state statute, is a state question within the final jurisdiction of courts of last resort of the several States. When, then, a state court decides that a particular formality was or was not essential under the state statute, such decision presents no Federal question, providing always that the statute as thus construed does not violate the Constitution of the United States by depriving of property without due process of law. This paramount requirement being fulfilled, as to other matters the state interpretation of its own law is controlling and decisive."

In *Leigh* v. *Green*, it was held that a statute providing for taxation *in rem* was constitutional; that summary methods of seizure and sale could be had; that the court, having jurisdiction over the *res*, might proceed to adjudicate the right to the property; that the same could be sold and that a tax deed issued thereunder would be valid; and that such proceedings did not abridge the protection guaranteed by the Constitution against the taking of property without due process of law.

And this being so, it cannot be successfully contended that the right to due process of law under the Fourteenth Amendment was specially set up or claimed by this eleventh clause, and denied by the state Supreme Court.

It is said that Federal questions were raised on a petition for rehearing, but this is denied, and the petition is not in the record. But if it were true, the suggestion came too late, though if the Supreme Court had considered and decided such alleged Federal questions, we could take jurisdiction, but the

court did not do so. So as to the petition for writ of error from this court, or the assignments of error here. They form no part of the record on which it is to be ascertained whether the state court decided a Federal question.

We are of opinion that no Federal question was raised at the proper time and in the proper way, and, moreover, that no Federal question was involved or decided.

*Writ of error dismissed.*