**UNITED STATES of America,
Appellee,**

v.

**Carlos Manuel CONCEPCION CUETO,
Defendant-Appellant.**

**No. 74–1138.**

United States Court of Appeals,
First Circuit.

Submitted Feb. 7, 1975.

Decided May 8, 1975.

---

Victor Gueierrez Fernandez, Santurce, P. R., by appointment of the court, on brief, for defendant-appellant.

Julio Morales Sanchez, U. S. Atty., and Otto J. Riefkohl, II, Asst. U. S. Atty., San Juan, P. R., on brief, for appellee.

Before COFFIN, Chief Judge, McEN-TEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

After trial to a jury, appellant was convicted on both counts of an indictment charging him with possession with intent to distribute two Schedule I controlled substances. 21 U.S.C. §§ 841(a)(1), 812. On this appeal he presents a number of claims which may be briefly summarized as follows. Appellant contends that there was insufficient evidence to support his conviction on either count; that allegedly improper conduct by the U.S. Attorney upon cross-examination and during closing argument to the jury violated his right to a fair trial; that a mistrial should have been declared due to the jurors' exposure to prejudicial publicity during the trial; that the district court erred in its charge on the meaning of "reasonable doubt"; and that the court erred in failing to charge the jury regarding his alleged alibi defense.

We examine first the sufficiency of the evidence claim, as a decision in appellant's favor on this issue would entitle him to a directed verdict of acquittal and effectively end the matter. The Government's evidence consisted principally of the testimony of two special narcotics agents who observed appellant on two evenings in November 1971. While neither was in a position to see all that occurred, their combined observations and testimony presented a reasonably complete picture. Viewing the evidence in the light most favorable to the Government, United States v. Doran, 483 F.2d 369, 372 (1st Cir. 1973), cert. denied, 416 U.S. 906, 94 S.Ct. 1612, 40 L.Ed.2d 111 (1974), the following appears:

On the afternoon of November 17, 1971, federal narcotics agents had a government informant under surveillance in the Condado area of Santurce, Puerto Rico. They observed appellant arrive in the area, talk with the informant, and then depart. They then talked with the informant and about two hours later went to his home to meet with him. There they searched him and gave him $650 in government funds. They then followed him back to the surveillance area and positioned themselves so that they could observe his activities. Shortly thereafter appellant again arrived in the area, driving a red pickup truck. He got out and approached the informant, they talked, and then walked back to the truck. When they reached the truck appellant got in and the informant came alongside. The agents then observed appellant give something to the informant and drive away. The informant then approached the agents and turned over to them the package he had received from appellant, a plastic bag containing white powder. This powder was subsequently determined to be a Schedule I controlled substance. The agents again searched the informant and found that the money which they had given him was no longer in his possession.

On November 23, 1971, a substantially similar pattern was observed. The agents observed appellant arrive in the Condado area, speak with the informant, and depart. They met the informant in a nearby parking lot, searched him, and gave him $450 in government funds. After following him back to the surveillance area and establishing their observation positions, appellant arrived in his truck. On this occasion the informant entered the truck with appellant, and they began to drive off. They did not go far, however, and one agent kept the truck always in his sight. Within a few

blocks, the informant alighted from the truck and, appellant having driven off, approached the agents and entered their automobile. There the informant turned over a package, containing what what was later determined to be a Schedule I controlled substance. He was searched, but the $450 was not found.

As the informant did not testify at appellant's trial, the evidence was to a large extent "circumstantial." But that label does not affect the result if "the total evidence, including reasonable inferences, . . . is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt." Dirring v. United States, 328 F.2d 512, 515 (1st Cir. 1964); see United States v. Currier, 454 F.2d 835, 838 (1st Cir. 1972).

■ Appellant chiefly attacks the sufficiency of the two searches of informant conducted prior to his meetings with appellant. He argues that these searches, coupled with the agents' alleged inability to constantly observe the informant, were insufficient to rule out the possibility that the substances were supplied by the informant himself, rather than by appellant. However, this argument would place upon the Government the burden of introducing evidence which excludes every reasonable hypothesis but guilt—a standard expressly rejected in *Dirring* and *Currier, supra.* The evidence was sufficiently detailed [1] to permit the jury to find that the informant had no controlled substances on his person initially; and the testimony regarding the surveillance would warrant its concluding that he had no opportunity to procure such substances prior to meeting with appellant. It was a reasonable inference that the substances turned over to the agents had been obtained from appellant in exchange for the money provided by the agents.[2] We conclude that the evidence supported the verdict.

1. Agent Amador Fortier testified that the searches consisted of turning the informant's pockets inside out, loosening his belt and pants to permit inspection, and taking off and inspecting his shoes and stockings.

2. As to the first transaction, the Government's case was strengthened by the redirect testimony of Agent Amador Fortier that he observed appellant hand the informant a package which he never thereafter lost sight of until it was in his hands.

■ We pass next to the issue of prejudicial publicity, which, because it requires a new trial, makes it unnecessary for us to consider the other assignments of error.

On the morning of the last day of trial, defense counsel informed the court of an article which had appeared in the previous day's edition of El Mundo, a daily newspaper. After conferring with counsel, the court proceeded to interview the jurors individually in his chambers, as recommended in Patriarca v. United States, 402 F.2d 314, 318 (1st Cir. 1968), cert. denied, 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969). His interrogation of the 13 jurors (12 regular and one alternate) revealed that while seven denied having read or heard of the article, two admitted having read it in its entirety, one said that he had read only the first portion of the story, and three told not only of hearing of its existence and contents during discussions in the jury room but demonstrated clear memories of derogatory information therein. The court asked each juror whether he or she could continue to be a "fair and impartial juror" in the case. Upon receiving an affirmative answer from all, the court, without admonishing the jury against further discussion of the article among themselves denied appellant's motion for a mistrial, and the attorneys delivered their closing arguments.

The news article, styled as a report on appellant's trial, recited [3] that appellant was considered by federal authorities "as one of the most important and most dangerous drug traffickers in Puerto Rico, Miami and the Caribbean," and that it could be determined from the purity of the substances obtained by the informant that appellant was "a 'very fat fish' for the federal agents." It reported that appellant had fled from two previous attempts to arrest him, on the second occasion engaging in a "shoot-out" with authorities for which he was also charged. The story also stated that appellant was presently detained at a local jail because unable to post the $200,000 bail set for him.

Each of these items possessed capacity for prejudice.[4] Appellant had taken the

---

**3.** The El Mundo article, published in Spanish, was officially translated as follows:

"At the Federal Court the trial was begun yesterday for several violations of the Narcotics Law against Carlos Manuel Concepcion Cueto, better known as 'Bald Cuban', considered by the Federal Authorities as one of the most important and most dangerous drug traffickers in Puerto Rico, Miami and the Caribbean.

\* \* \* \* \* \*

When the agents were about to arrest Concepcion Cueto on January 1972 he had fled. Upon returning to the Island on May 1973, the federal agents located him in a sector of the Los Angeles Development of Carolina, but the defendant managed to escape after allegedly interchanging shots with said agents.

Concepcion Cueto is also accused for the shoot-out, although these facts are not included in the present trial.

At the end of last year the federal agents again located Concepcion Cueto at the Ocean Park sector of Santurce, and arrested him while he was traveling with a girl friend in a late model car, of the most expensive ones.

Since then the defendant has been detained at La Princesa Jail, because he has not been able to post the $200,000.00 bail set to him.

It is alleged by the Federal authorities that when someone sells a sample of one half ounce of heroin with a purity of 48 percent, it is because he is very close to the principal source of the narcotics, where it is sold with a purity of 98 percent, and that makes him a 'very fat fish' for the federal agents.

On the streets that drug is retailed to the addicts with a purity of only between one and two percent, as was learned."

**4.** See, e.g., United States v. McKinney, 429 F.2d 1019 (5th Cir. 1970), cert. denied, 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971) (reports that defendant had escaped prior to trial potentially prejudicial); United States ex rel. Doggett v. Yeager, 472 F.2d 229 (3d Cir. 1973) (attempted escape account recognized as possibly harmful); United States v. Kum Seng Seo, 300 F.2d 623 (3d Cir. 1962) (disclosure that defendant was in county jail in default of $100,000 bail prejudicial); cf. United States v. Solomon, 422 F.2d 1110 (7th Cir. 1970) (account describing defendant as "reputed crime syndicate loan shark" and linking him

stand and had been subjected to an intensive cross-examination hinting both that he was no stranger to courts and that he was living well beyond the means afforded by his purported occupation as a farmer.[5] His subsequent portrayal in the article as a leading drug trafficker, a "fat fish", and an armed desperado who had engaged in an escape and a shoot-out with police, put the finishing touches on a characterization fitting neatly with the criminal conduct of which he was charged. Although we need not decide whether any one item, by itself, would have required a new trial, the collective impact went beyond tolerable limits. Jurors were, moreover, exposed to this disturbing information at a crucial moment, immediately prior to closing arguments and shortly before they began their deliberations. *See Kum Seng Seo, supra* note 4, at 625; *McKinney, supra note* 4, at 1022–23; United States v. Thomas, 463 F.2d 1061, 1065 (7th Cir. 1972).

■ In the circumstances we do not think the jurors' assurances of continued impartiality nullified appellant's claim of prejudice. Had the potential harm been less clear, the individual assurances might have been very useful in assessing actual impact. *Cf.* ABA Standards Relating to Fair Trial and Free Press §§ 3.4(b), 3.5(f) (Approved Draft 1968). But a juror's impressions, however honest, cannot be dispositive where the improper information is as damning and material as this. *See id.,* Commentary at 56–66; Silverthorne v. United States, 400 F.2d 627, 639 (9th Cir. 1968), cert. denied, 400 U.S. 1002, 91 S.Ct. 585, 27 L.Ed.2d 633 (1971): *cf.* Irvin v. Dowd, 366 U.S. 717, 727–28, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). A criminal defendant's guilt is not to be determined from inadmissible

evidence. Here the content and timing of the material went beyond anything we feel able to assume the average juror could withstand. It also went beyond anything the defendant should be forced to accept. Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959).

The problem leading us to reverse was not generated by the court and was in large measure outside its control. A court's best defensive weapon, if the jury is not to be sequestered, is a strong anticipatory warning prior to trial in cases (or areas) where such stories are likely to erupt. *See* Report of the Committee on the Operation of the Judiciary on the "Free Press—Fair Trial" Issue, 45 F.R.D. 391, 410–13 (1968).

■ If, nonetheless, a jury is inadvertently exposed to a prejudicial news report, the court should point out forcefully the possible unreliability of any such report and the total impropriety of considering it, *see* United States v. Davila Williams, 496 F.2d 378, 383 (1st Cir. 1974); United States v. Persico, 425 F.2d 1375, 1380–82 & n. 8 (2d Cir.), cert. denied, 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108 (1970), and the court should admonish the jurors against any further discussion of the item. In the present case, for example, we could have no assurance that the seven jurors who were unfamiliar with the article did not subsequently learn of it from their colleagues. This is not to say that such further instructions would always be curative; but in a marginal case their presence could help to remedy and confine the prejudice.

The judgment of conviction is vacated and the cause is remanded to the district court for a new trial.

---

with organized crime improper, though not "prejudicial per se").

**5.** While we do not deal with appellant's claims of prosecutional overreaching during cross-ex-

amination and in closing argument, it is fair to say that these claims are not frivolous.