Rodric MORRIS, Appellant,

v.

UNITED STATES of America, Appellee.

Haywood PHILLIPS, Appellant,

v.

UNITED STATES of America, Appellee.

Nathan MORRIS III, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 87–102, 87–197 and 87–290.

District of Columbia Court of Appeals.

No. 87–102 Submitted March 14, 1989.

Nos. 87–197 and 87–290 Argued
March 14, 1989.

Decided Sept. 29, 1989.

---

Ralph Larry Warren, with whom Edwin Harvey was on the brief for appellant, Rodric Morris.

Richard S. Greenlee, Public Defender Service, with whom James Klein, Public Defender Service, Washington, D.C., was on the brief for appellant, Haywood Phillips.

Ronald A. Goodbread, Washington, D.C., for appellant, Nathan Morris.

Geoffrey Brigham, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, were on the brief, for appellee.

Before ROGERS, Chief Judge, and MACK, Associate Judge, and PRYOR, Senior Judge.

MACK, Associate Judge:

In these consolidated appeals, appellants—two brothers and their cousin—challenge their conviction, by a jury, of raping and sodomizing the complainant. It is alleged that complainant had asked appellant Rodric Morris, her coworker, for a ride home, but under a pretext he drove her to the home of co-appellant Haywood Phillips. After he misled her into entering his friend's home with him, Rodric Morris and co-appellants allegedly raped and sodomized her. At trial, Rodric Morris contended that he believed complainant had desired to have sexual intercourse with him; his co-appellants asserted defenses of innocent presence.

While the trial was in progress, three television networks ran news features on "date rape." This was brought to the trial judge's attention, but he refused to voir dire the jury about its possible exposure to the programs and resultant bias until after the verdict was announced. He then interrogated the jurors individually, and was satisfied that, while two of them had seen one of the programs, and one had apparently briefly alluded to it either before or during deliberations, none of the jurors was influenced by the program.

Further, in closing argument, government counsel asked the jury to "use [its] imagination" to reconstruct an alleged collusive discussion between codefendants planning the rape, which counsel had outlined using leading questions that appellants denied. Appellant Rodric Morris' counsel moved for a mistrial on grounds that the prosecutor had "made speculations as to facts that were not in evidence, such as conversations that the defendant had, with specifics, as to what was going on there that night, that were totally improper." The trial court denied the motion on grounds that the government's argument merely suggested the inferences the jury could draw from the evidence presented.

Appellants appeal from both rulings. We affirm.

Appellants argue that the jury's exposure to television programs discussing date rape was prejudicial to their "date rape defense" and offensive as "evidence outside the courtroom" under the rule of *Patterson v. Colorado*, 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879 (1907) (Holmes, J.) ("[C]onclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether private talk or public print."). *See generally Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959).

When jurors have been exposed to media discussion of issues they are considering a two-part determination is required. First, the trial court must decide whether the information was potentially prejudicial. Only if the court determines that it was, it must voir dire the jurors to determine whether they have been prejudiced by it. *United States v. Pomponio*, 517 F.2d 460, 463 (4th Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). It is preferable that jurors be interviewed individually and outside each other's presence, although not mandatory. *United States v. Perrotta*, 553 F.2d 247, 250 & n. 6 (1st Cir.1977); *Margoles v. Unit-*

*ed States,* 407 F.2d 727, 735 (7th Cir.), *cert. denied,* 396 U.S. 833, 90 S.Ct. 89, 24 L.Ed.2d 84 (1969). These determinations are discretionary to the trial court. *Perrotta, supra,* 553 F.2d at 250; *Pomponio, supra,* 517 F.2d at 463; *United States v. Hankish,* 502 F.2d 71, 77 (4th Cir.1974). If it is determined that there is potential prejudice, the court has the discretion to give curative instructions, seat alternate jurors, declare a mistrial, or take other corrective measures. *Hankish, supra,* 502 F.2d at 77.

■ Here the trial court made no explicit finding of potential prejudice, but this was implied by its decision to hold a post-verdict voir dire on prejudice. After holding that voir dire, the trial court was satisfied that none of the jurors had been biased by any first- or second-hand exposure to the television programs. Appellants argue that the trial court should have held an *immediate* voir dire, before the verdict, and that its conclusions, based on the post-verdict questions, were invalid because the policy against allowing jurors to impeach their own verdict rendered the questions themselves invalid. However, two of the four cases cited by appellants for this proposition, *Pomponio, supra,* and *Margoles, supra,* do not mention an immediacy requirement, and the other cases that do so are merely dicta. *Perrotta, supra,* 553 F.2d at 249; *Mares v. United States,* 383 F.2d 805, 808–09 (10th Cir.1967). The issue they address is whether voir dire is required at all, and they rely, in turn, on authorities which state no immediacy requirement.[1] Moreover, the policy against

jury impeachment is weighty but not absolute, and does not exceed countervailing Sixth Amendment concerns. *Thomas, supra* note 1, 463 F.2d at 1064. Indeed, analogy to our own recent remand in *Artisst v. United States,* 554 A.2d 327 (D.C. 1989), wherein, by ordering a post-trial voir dire, we cured the trial court's failure to question a juror who allegedly knew appellant, demonstrates the permissibility of post-trial voir dire.

■ Furthermore, it cannot be contended that the mere exposure to media coverage, without more, results in a *per se* requirement of reversal. All of the leading cases in this area have involved juror exposure to media coverage of the actual trial in which they were sitting, and all involved their receipt of information that would have been inadmissible in the actual trial. Thus, in *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), a substantial number of jurors got hold of accounts reciting "other crimes" evidence against the appellant. Similarly, in *Pomponio, supra,* the jury was exposed to newspaper articles indicating that the trial concerned only 10 of 113 counts against appellants, and that two key witnesses had refused to testify. Again, in *Hankish, supra,* jury members read a newspaper article describing appellant as a "rackets figure" and connecting him with a "multi-state theft ring" contemporaneously broken up by the FBI. The article stated that appellant had "directed operations despite the loss of both legs ... when his car was blown up in gangland fashion." *Id.* at 76.[2]

1. For example, *Perrotta* cites *Pomponio* and *Margoles,* as well as *Hankish, supra,* 502 F.2d at 76–78; *United States v. Thomas,* 463 F.2d 1061 (7th Cir.1972); *United States v. Schrimsher,* 493 F.2d 848, 854 (5th Cir.1974); and *United States v. Vento,* 533 F.2d 838, 869 & n. 106 (3d Cir. 1976), none of which indicates any immediacy requirement.

2. Other cases read similarly. Thus, in *Margoles, supra,* the jury was exposed, through a newspaper article, to inadmissible testimony heard outside its presence. (In that case, the jury also received mail commenting upon the case as the result of a newspaper's publication of the names and addresses of the jurors.) In *Thomas, supra*

note 1, the jury was exposed to "publicity" showing that appellant "was part of a much larger conspiracy than either the evidence at trial had specifically indicated or than the indictment had charged," *id.* at 1064, including inadmissible evidence of other, severed, conspirators. In *Schrimsher, supra* note 1, the judgment was affirmed although the jury had heard news accounts that defense counsel had been stepped back for contempt in the case before them. In *Mares, supra,* reversal was warranted where the trial judge refused to poll jurors about their possible exposure to an article indicating that appellant had confessed to the charged offense, but that the trial judge had "apologetic[ally]" refused to admit this confession as evidence,

While we do not suggest that there are no circumstances in which news accounts discussing the merits of a particular theory, rather than the specific case on trial, would warrant mistrial, or reversal on appeal, we are satisfied that the facts of the case on appeal do not rise to that level. Our review of a videotape of the lone program seen by any of the jurors reveals very evenhanded journalism that endorsed no particular theory or perspective.

The federal district court for this jurisdiction confronted a similar issue recently in impaneling jurors for the Oliver North trial, and more remotely in time, in impaneling jurors for the Watergate coverup trials. These cases involved such widespread publicity that it was very difficult to find jurors who had not been exposed to the facts and issues to be tried. In the North case, of course, the trial court went to extraordinary pains to locate such jurors. Nevertheless, in *United States v. Haldeman,* 181 U.S.App.D.C. 254, 559 F.2d 31, *cert. denied sub nom. Ehrlichman v. United States,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977), *reh'g denied,* 433 U.S. 916, 97 S.Ct. 2992, 53 L.Ed.2d 1103 (1977) (together with *Mitchell v. United States,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977)), the trial court had allowed jurors to sit who were familiar with the facts and issues involved in the case, and the District of Columbia Circuit held that this familiarity with the Watergate cases did not disqualify the venire.

By analogy, the jurors' familiarity with the moral and legal issues involved, especially in the absence of familiarity with the particular facts of the case, does not warrant reversal, however that familiarity may have been acquired. Since the trial court held a post-verdict voir dire of the jurors in this case, it had an opportunity to determine whether a more significant source of prejudice had crept into the jurors' decisionmaking, and decided that it had not. On these facts, reversal because of jury exposure to media coverage is unwarranted.

In closing, the prosecutor asked the jury to "use [its] imagination" to reconstruct a purported conversation between appellants in which they allegedly planned to gang rape complainant. This conversation was important, since it was complainant who requested the lift home from Rodric Morris, and his co-appellants would have had no way of anticipating her arrival. Thus they could not have planned to rape her until they had conversed with each other after her arrival. (There is no dispute that appellants conversed briefly at one point outside her presence, only about what they discussed.) Particularly since the prosecutor reconstructed this conversation entirely by asking leading questions, which appellants denied, rather than by eliciting testimony, appellants contend that his remark in closing argument was improper.

Closing argument may elicit reasonable inferences from the evidence presented, although it may not present new evidence or rely on evidence that has not been presented. *Irby v. United States,* 464 A.2d 136, 140 (D.C.1983); *Tuckson v. United States,* 364 A.2d 138, 142 (D.C.1976). Appellants assert that the government's closing argument did the latter by relying on the prosecutor's leading questions rather than on testimony. But when the prosecutor said, "Use your imagination," he implied not that the content of the conversation had been presented in evidence, but rather, that the content of the conversation could be gathered by reasonable inference. *Jones v. United States,* 512 A.2d 253, 257 (D.C.1986). It was uncontested that a conversation had occurred, and substantial evidence showed that a series of sexual assaults immediately ensued. Of course, in the absence of supporting evidence, the prosecutor's remark would have been speculative. However, since it addressed a narrow question (whether, based on the fact of the conversation and what immediately followed, appellants used that opportunity to plan a series of sexual assaults), in substance it called only for an inference.

In making these observations, of course, we strongly advise against the

saying he "was regretful when true facts have to    be omitted."

general use of such language in closing argument. Under most circumstances, asking the jury to imagine is highly speculative and impermissible. We emphasize that any remark inviting inferences by the jury must be based on and manifestly linked to evidence presented in open court, *Irby, supra,* 464 A.2d at 140; *Tuckson, supra,* 364 A.2d at 142, must not be inflammatory, *Viereck v. United States,* 318 U.S. 236, 247–48, 63 S.Ct. 561, 566–67, 87 L.Ed. 734 (1943); *Miller v. United States,* 444 A.2d 13 (D.C.1982), and may not argue facts not in evidence. *Donnelly v. De-Christoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Jones, supra,* 512 A.2d at 257–58. Because an invitation to "imagine" runs the risk of bidding the jury to consider possibilities outside those intended by the prosecutor, more exact language should virtually always be used.

Finally, appellants take issue with certain closing comments by the prosecutor insinuating that the jury should account for the psychological difficulty a rape victim experiences in bringing charges against her assailants in considering the relative credibility of the complainant and the defendants. However, the court responded by promptly instructing the jury to disregard those comments. Since the jury is presumed to follow such instructions, *Smith v. United States,* 315 A.2d 163, 167 (D.C.1974), there was no error and the comments were harmless.

*Affirmed.*