438 So.2d 8 (1983)
Donald Ray ROBINSON, Appellant,
v.
STATE of Florida, Appellee.
No. 82-273.
District Court of Appeal of Florida, Fifth District.
March 9, 1983.
Rehearing Denied April 7, 1983.
James B. Gibson, Public Defender, and Theresa K. Edwards, Asst. Public Defender, Daytona Beach, and Norman R. Wolfinger, Asst. Public Defender, Titusville, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Mark C. Menser, Asst. Atty. Gen., Daytona Beach, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
Appellant appeals from a judgment of conviction for second degree murder. We reverse and remand for a new trial.
The question presented is whether the trial court erred in refusing to inquire as to whether the jurors had read certain news accounts relating to appellant's trial.
Jury selection was completed on Monday afternoon, November 2, 1981. Before recessing until the following morning, the trial judge specifically ordered the jurors not to read any newspapers, especially the Cocoa Today and the Orlando papers, or to watch any news broadcasts about the case.
After the jury was sworn the next morning, defense counsel requested that the court question the jurors as to whether any of them had read news articles which had appeared in the Cocoa Today and Orlando Sentinel that morning.[1] The court denied this request.
*9 There do not appear to be any Florida cases addressing the procedure to be followed when a claim of potentially prejudicial publicity arises after the jury has been selected. However, numerous federal circuit courts of appeal and other state courts have considered the question and developed the following procedure.[2] Initially, the trial court must determine whether the published material has the potential for prejudice. United States v. Perrotta, 553 F.2d 247 (1st Cir.1977); Commonwealth v. Jackson, 376 Mass. 790, 383 N.E.2d 835 (Mass. 1978); Brown v. State, 601 P.2d 221 (Alaska 1979). If it does, then a two-step process is necessary. First, the court should inquire of the jurors as to whether any of them read the material in question. If none of the jurors read the material, then its publication could not have prejudiced the defendant and the trial may proceed. United States v. Carter, 602 F.2d 799 (7th Cir.1979); United States v. Khoury, 539 F.2d 441 (5th Cir.1976). If any of the jurors indicate they have read the material, they must be questioned to determine the effect of the publicity, i.e., whether they can disregard what they read and render an impartial verdict based solely on the evidence at trial.[3]See, e.g., Margoles v. United States, 407 F.2d 727 (7th Cir.1969). This procedure has been deemed necessary even though the trial court repeatedly admonished the jury, as here, regarding the reading of newspapers during the trial. See, e.g., United States v. Carter; United States v. Pomponio, 517 F.2d 460 (4th Cir.1975); United States v. Barrett, 505 F.2d 1091 (7th Cir.1975).
In the instant case, the articles in question referred to a separate charge against appellant which arose out of a well publicized jail break attempt at the county jail. Clearly, such material had the potential for prejudicing appellant in his trial on an unrelated murder charge. However, the trial court failed to even make a threshold inquiry as to the possibility of prejudice.[4] The court also failed to inquire as to whether any of the jurors had, despite the court's admonition, read the articles. The court's failure to take any action to determine whether the jurors had been exposed to and prejudiced by the articles requires that appellant be given a new trial.
We also consider one other point raised by appellant, that being whether his sixth amendment rights were violated when the trial court limited his cross-examination of Muszynski, the state's jailhouse witness.
After witness Muszynski testified for the state to comments made to him in jail by appellant, appellant sought unsuccessfully to cross-examine him regarding allegations he made in a pending motion for post conviction relief to the effect that he was totally incompetent at the time he committed the crime he was convicted of, at the time of his trial, and at the time his motion *10 for post conviction relief was filed in July, 1981. Appellant claims that his purpose in asking questions about these allegations was to attack Muszynski's credibility: to show that Muszynski, who was giving vital evidence against appellant, was at the same time claiming to be incompetent. He was not seeking to challenge Muszynski's competence or sanity.
It is elementary that a criminal defendant is to be afforded wide latitude when he cross-examines a witness against him and seeks to demonstrate bias or prejudice on the part of the witness. See Coxwell v. State, 361 So.2d 148 (Fla. 1978); Lutherman v. State, 348 So.2d 624 (Fla. 3d DCA 1977). See also Steinhorst v. State, 412 So.2d 332 (Fla. 1982). This is especially true when the cross-examination is of the key prosecution witness. Porter v. State, 386 So.2d 1209 (Fla. 3d DCA 1980).
The questions sought to be asked by appellant should have been permitted as Muszynski was a key witness for the state and the questions were relevant to the issue of Muszynski's credibility. Appellant should have been permitted to question Muszynski regarding the claim in his motion for post conviction relief, filed just a few months before the instant trial, that he "was and still is totally incompetent" and how this squared with his ability to testify at the trial, since this apparent contradiction would have been relevant on Muszynski's truthfulness.
One final observation remains. The prosecutor exceeded the bounds of propriety in closing and rebuttal arguments. We believe, however, that no good purpose would be served by discussing the specifics of closing argument and are confident that a repetition of such offensive argument will not occur in appellant's retrial.
REVERSED and REMANDED for a new trial.
ORFINGER, C.J., and COBB, J., concur.
NOTES
[1] The Cocoa paper had published a short article entitled "Re-trial in Murder Case Begins Today." The Orlando Sentinel published an article entitled "Murder Suspect Charged in Attempted Jail Escape." Appellant was identified in both articles and both articles referred to the fact that appellant had recently been charged in an escape attempt at the Brevard County jail.
[2] See, e.g., United States v. Carter, 602 F.2d 799 (7th Cir.1979); United States v. Herring, 568 F.2d 1099 (5th Cir.1978); United States v. Perrotta, 553 F.2d 247 (1st Cir.1977); United States v. Khoury, 539 F.2d 441 (5th Cir.1976); United States v. Barrett, 505 F.2d 1091 (7th Cir.1975); Margoles v. United States, 407 F.2d 727 (7th Cir.1969); Reining v. United States, 167 F.2d 362 (5th Cir.1948). While the procedure enunciated in these cases does not appear to be constitutionally mandated, see United States v. Herring, 568 F.2d at 1105, at least two states which have recently considered the matter have adopted it. Brown v. State, 601 P.2d 221 (Alaska 1979); Commonwealth v. Jackson, 376 Mass. 790, 383 N.E.2d 835 (Mass. 1978).
[3] The mere fact that a juror may have been exposed to publicity about a case does not mean he cannot serve on a jury; rather the question is whether the juror can lay aside his impressions and opinions and render a verdict based on the evidence presented in court. United States v. Jiminez-Diaz, 659 F.2d 562 (5th Cir.1981). See also Irvin v. Doud, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1960); Singer v. State, 109 So.2d 7 (Fla. 1959); Murphy v. State, 252 So.2d 385 (Fla. 3d DCA 1971).
[4] Factors to be considered in determining the possibility of prejudice are how closely related the publicity is to the case, its timing, its prominence, its tone and the likelihood the jury was exposed to it. United States v. Herring, 568 F.2d at 1104-1105; Brown v. State, 601 P.2d at 232.