498 So.2d 1334 (1986)
Tammy Ann DUQUE, Appellant,
v.
STATE of Florida, Appellee.
No. 85-1178.
District Court of Appeal of Florida, Second District.
December 10, 1986.
*1336 James Marion Moorman, Public Defender, and Deborah K. Brueckheimer, Asst. Public Defender, Tampa, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Michael J. Kotler, Asst. Atty. Gen., Tampa, for appellee.
LEHAN, Judge.
Defendant appeals from her conviction for the first degree murder of her father. The conviction came upon defendant's retrial after this court's reversal of her prior conviction. Duque v. State, 460 So.2d 416 (Fla. 2d DCA 1984). We reverse and remand for a new trial.
Defendant's contentions on appeal are as follows:
I. The trial court's refusal to allow the defendant to use a remaining peremptory challenge to strike a juror who informed the court of his strong law enforcement bias after his selection but before being sworn constitutes reversible error.
II. The trial court's refusal to question the jury regarding a mid-trial news article which stated that the defendant had been convicted at her first trial constitutes reversible error.
III. The cumulative effect of the prosecutor's highly prejudicial and improper remarks, made during his rebuttal closing argument, requires that the defendant be granted a new trial.
A. The prosecutor's prejudicial allegations regarding a defense witness, made during the rebuttal closing argument, were highly improper.
B. The prosecutor violated the court's intent that no reference be made to the outcome of the defendant's first trial, and the defendant's motion for a mistrial should have been granted.
C. The prosecutor's extremely derogatory characterization of one of the defendant's witnesses, rendered in the form of a personal opinion, was even more prejudicial because it included an implication that others in the courthouse shared his opinion.
IV. The trial court erred in admitting highly prejudicial hearsay statements purportedly made by defendant's mother and the statements were not admissible under any exception to the hearsay rule.
Our conclusion in this case is much the same as that expressed by the Fourth District Court of Appeal in Dukes v. State, 356 So.2d 873, 874 (Fla. 4th DCA 1978): "While we might be persuaded to overlook ... one of the errors about which appellant complains, the totality of the circumstances in this case leads us to believe the appellant was not afforded a fair trial."
As to contention I, the trial court denied defendant's request to exercise a peremptory challenge by striking a juror who, after the jury had been selected but before it had been sworn, told the court that he was biased in favor of law enforcement. The failure to permit the exercise of the challenge was error. "[A] party may challenge any juror at any time before the jurors are sworn." Jackson v. State, 464 So.2d 1181, 1183 (Fla. 1985). See Kidd v. State, 486 So.2d 41 (Fla. 2d DCA 1986). The state concedes that the failure to permit the backstrike was error but, citing Jones v. State, 332 So.2d 615 (Fla. 1976), *1337 argues that the error was harmless because the subsequent interview of the juror by the trial judge, defense counsel and the prosecutor showed that the juror could be fair and impartial. However, the challenge was a peremptory challenge for which prejudice of the juror need not be shown. Jones stands for the proposition that the failure to permit a backstrike is harmless error where there is overwhelming evidence of a defendant's guilt. But, as discussed below, we cannot say that there was harmless error.
As to contention II, during the trial there appeared in the Tampa Tribune an article stating that defendant had been convicted at her first trial. The trial court denied defense counsel's request to inquire of the jurors whether they had heard of or read the article. There can be no question that the article was at least potentially prejudicial. The denial of defense counsel's request was reversible error. Kruse v. State, 483 So.2d 1383 (Fla. 4th DCA 1986); Robinson v. State, 438 So.2d 8 (Fla. 5th DCA 1983). The trial judge was concerned that asking the jurors about the article might pique the curiosity of those who had not known of the article and cause them to read it. However, under these circumstances it should not be presumed that an admonition to the jurors not to read the article would be disregarded; such a concern could well have existed in Robinson and Kruse also.
We now turn to contention III. This involves an important defense witness who does not appear to have been a witness at defendant's first trial.
As to contention III. A, during closing argument the prosecutor, in attacking the credibility of the witness, argued that the witness had solicited Stanley Smith, a person who, as further described below, had been involved with defendant in the alleged plan to kill defendant's father, to kill the witness' own ex-wife and daughter. The prosecutor argued that the witness was testifying for the defendant to get even with Smith for reporting such solicitation to the authorities. However, there was no testimony to that effect to justify the argument. The only reference to such solicitation on the part of the witness was in questions in cross-examination by the prosecutor. The witness denied any such solicitation. This was the same type of improper argument by the prosecutor which contributed to this court's reversal of defendant's first conviction, i.e., a statement which went beyond the evidence before the jury. Duque, 460 So.2d at 417.
As to III. B, the prosecutor in closing argument commented on testimony of that same defense witness that the witness had decided to testify for the defendant because the witness had learned that the defendant, after the first trial, was sentenced to jail. Defendant argues that this was an improper and prejudicial comment as to defendant's first conviction. The state argues that the prosecutor's reference to the testimony was fair comment on testimony elicited by defense counsel during cross examination of the witness. However, the record does not establish that the statement was elicited by defense counsel and shows that the trial court felt it was not. The mere existence of improper prejudicial testimony in a trial does not justify a prosecutor's exploitation thereof during closing argument.
As to III. C, the prosecutor in closing argument characterized that same defense witness as a "scum bag." The statement was that the witness was "the type of person, characterized around this courthouse as a scum bag." We agree with defendant's argument that this was an improper expression of opinion by the prosecutor, the prejudice of which was exacerbated by the indication that others in the courthouse would share the same opinion. "It is improper in the prosecution of persons charged with a crime for the representative of the state to apply offensive epithets to defendants or their witnesses, and to engage in vituperative characterizations of them." Green v. State, 427 So.2d 1036, 1038 (Fla. 3d DCA 1983). See also Dukes.
*1338 There is no question that contention III B. was preserved for appeal. The state argues that III A. and III C. were not preserved for appeal. As to III A., we agree with the defendant's argument that his objection and motion for a mistrial during the prosecutor's closing argument preserved that contention for appeal in this case. As to III C., we believe that the totality of the circumstances shows that defendant did not receive a fair trial and that we should, under the facts of this case, consider that contention as involving fundamental error. See Dukes.
As to contention IV, defendant argues that the trial court erred in admitting into evidence certain hearsay testimony, to wit, testimony by a witness of statements made to that witness by defendant's mother in defendant's presence. Defendant's mother was not a witness at this trial. Included were purported statements by the mother that, "I am going to live to see him dead"; "If I don't do it, I know somebody who will"; and "I know somebody who will do it and it won't cost me a penny."[1] Defendant argues that these statements were prejudicial in purporting to show a plan to kill the victim. The state argues that the statements were not hearsay because they were offered in evidence only to show their effect upon defendant. However, there was no evidence of any effect they had upon defendant. The state alternatively argues that they were excepted from the hearsay rule as showing (a) defendant's state of mind, (b) as excited utterances, and (c) as a statement by a coconspirator. We disagree with these arguments. As to (a), the state of mind exception concerns the declarant's state of mind. See Fleming v. State, 457 So.2d 499 (Fla. 2d DCA 1984); Van Zant v. State, 372 So.2d 502 (Fla. 1st DCA 1979). But it is the defendant's state of mind which was in issue here. As to (b), that defendant's mother, the declarant, was excited when she made the statements may bear upon the credibility of the mother as to the mother's desires for the victim's death. But in issue in this case was whether defendant had that same desire. The testimony did not refer to anything defendant said or did on the occasion of those statements by the mother. As to (c), the state points to no proof of a conspiracy between the defendant and her mother to kill the victim, and we find no such proof in the record. See State v. Morales, 460 So.2d 410 (Fla. 2d DCA 1984). Especially since defendant's defense was that she had no plan to kill the victim, the testimony was highly prejudicial and its admission constituted error.
We recognize that it may be debated that this type of hearsay evidence could be admissible as an exception to the hearsay rule as a statement of the declarant's then existing state of mind when the prosecution shows that declarant's state of mind is at issue in the case. But we find no showing in that regard. There was no evidence that defendant's actions were to fulfill her mother's expressed desire to see the victim dead, and, as we have said, no conspiracy between defendant and her mother was established.[2]
We have considered whether the errors described above were harmless. In deciding that they were not harmless, we have applied the test set out in State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), "The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." Id. at 1135.
*1339 The victim was killed from shotgun blasts admittedly fired by Stanley Smith. Defendant was accused of planning the murder and taking the victim to a remote area where he was killed. There is no question that defendant took him there. The issue is whether she, in conjunction with Smith and Tony Huffman, planned the murder and knew it was to occur. The case against defendant was based largely upon the testimony of Smith, the trigger man who was shown to be defendant's mother's friend, and Huffman, Smith's close friend, who, with a crowbar in hand laid in wait with Smith for the victim to approach. Their testimony was that they and defendant planned the murder. Huffman, also a friend of defendant, testified to a relationship with defendant which defendant denied. There was evidence that Smith had received a fifteen year jail sentence on a plea bargain and that Huffman had been granted immunity. Directly contrary to the testimony of Smith and Huffman was the testimony of defendant and Marion Wells, the defense witness referred to in our discussion of contention III. Defendant denied having planned her father's death and having known that Smith would shoot him. Wells, Smith's cellmate, testified that Smith told Wells that Smith had decided to kill the victim for money and that defendant "was stupid, she didn't know anything of what was going on until the last minute."
There was other evidence which corroborated to varying degrees the testimony for and against defendant. For example, Huffman testified that defendant exhibited surprise when the shots were fired; he testified, "[R]ight after the first shot, she was, like, surprised... . She was, like, in a daze ... she couldn't believe it, I don't think... . She was, like, surprised." Also, testimony of Smith, which seemed to be contradicted by testimony of Huffman, was that he and Huffman had on another occasion four or five months earlier confronted another person, a relative of Huffman, with the same gun to scare that person. Defendant's testimony was that she had thought that Smith and Huffman would only scare her father. On the other hand, and again only as examples, there was testimony from a neighbor which was that, as defendant acknowledged in her testimony, defendant was present when Smith put the gun in the trunk of his car sometime before the shooting. Also, defendant accompanied Smith and Huffman for a substantial period of time when they drove around after the shooting during which time defendant made a telephone call to her aunt indicating that defendant had not seen her father that night.
While there was substantial, competent evidence on the basis of which the jury could properly have convicted defendant, we cannot say that there is no reasonable possibility that the errors, or some of them, contributed to defendant's conviction by contributing to the jury's believing Smith and Huffman and disbelieving defendant and Wells as to the planning of the murder.
Reversed and remanded for a new trial.
CAMPBELL, A.C.J., and FRANK, J., concur.
NOTES
[1] In State v. Duque, 472 So.2d 758 (Fla. 2d DCA 1985), this court reversed a dismissal of an information filed against defendant's mother for solicitation to commit this same murder.
[2] For the information of counsel in this case we note that we recognize that there is unreported background on this aspect which seems to be inconsistent with our conclusion here but was based upon another record. In any event, we would reverse on the other grounds even absent this aspect.