GLICKSTEIN, Judge.
An information was filed against twenty-five individuals and nine entities in a total of 177 counts arising from a Florida fuel tax fraud scheme. Of the 177 counts, a total of 21 were originally leveled against appellant; however the prosecution elected to proceed against appellant on only eight of these counts. Although these counts appear in the information as counts 1, 2, 4, 45, 91, 92, 115 and 116, they were renumbered 1 through 8 respectively for purposes of jury deliberations. One count alleged the violation of the Racketeer Influenced and Corrupt Organization Act (RICO) by the establishment of a scheme whereby various entities were created and licensed to be fuel wholesalers, by these entities’ routine falsification of entries in their business records and in the reports they were obliged to file with the state and by their use of these entities to conduct a “Gas Tax Enterprise” through a series of racketeering activities. The particular racketeering acts submitted to the jury against appellant were grand thefts on July 20,1984, August 20, 1984, October 20, 1984, and November 20, 1984.
Another count of the information alleged a conspiracy to violate RICO by the formation of the enterprise and the establishment of the various entities. Said count further alleged that the principal object of the conspiracy was the theft of tax revenues from the State of Florida associated with the taxable sales of gasoline and diesel fuel by means of filing fraudulent tax returns containing false information as to taxable gallons of fuel sold and the amount of taxes due from these sales.
Other counts alleged the theft of state funds by the appellant’s failure to remit taxes collected from the sale of diesel fuel and due to be remitted on October 20,1984 and November 20, 1984; and the appellant’s failure to account to the Florida Department of Revenue for the fuel taxes collected by the Petroleum Delivery Company, Inc. and due to be remitted on October 20, 1984 and November 20, 1984.
Appellant was tried before a jury from July 7 through July 15, 1986. During the state’s closing argument, the prosecutor made various remarks which provoked defense objections, a request for curative instruction and a motion for mistrial. The court declined to give the requested curative instructions or to grant a mistrial.
Following the instructions to the jury, the jurors retired for deliberation and the alternates were discharged. After about four hours, the court was informed that the jurors were “having a problem” reaching a verdict. The court told the jurors to continue deliberating. The jury eventually returned a verdict finding appellant not guilty of the RICO charge (Count I); guilty of the RICO conspiracy (Count II); guilty of theft of state funds (Counts III and IV); not guilty of failure to account for taxes due (Counts V and VI); and not guilty of grand theft (Counts VII and VIII).
*744 Before the jury was released, defense counsel asked the court to poll the jurors, the defense having learned from the alternate jurors that the jurors had read and discussed newspaper articles about the case. The court declined to do so. On July 25, 1986, appellant filed a motion for new trial to which he attached affidavits and exhibits in support of his allegation that the jurors had improperly considered prejudicial newspaper articles about the case. The court denied the motion.
Appellant was sentenced to five and one-half years on Count II (RICO conspiracy) and to consecutive five year terms of probation on Counts III and IV (Theft of State Funds). In addition, the court ruled that it would be making a monetary assessment for restitution at a later date.
Although appellant raises three points on appeal, we shall discuss only that one which requires that we reverse the conviction and remand; namely, the trial court’s refusal to determine whether the jurors’ reading of newspaper articles may have affected the verdict.
In Diaz v. State, 435 So.2d 911 (Fla. 4th DCA 1983) the same problem arose. On remand the trial court here is directed to follow the same procedure which was directed in Diaz, If the jury cannot be reconvened and a proper determination made, a new trial shall be held. Florida case law on the question of whether the failure to poll jurors regarding their exposure to news articles constitutes error relies in great part on federal case law. See Robinson v. State, 438 So.2d 8 (Fla. 5th DCA), rev. denied, 438 So.2d 834 (Fla.1983); Kruse v. State, 483 So.2d 1383, 1388 (Fla. 4th DCA 1986).
We cannot in good conscience apply the harmless error rule because we cannot say beyond a reasonable doubt that the trial court’s error in not polling the jurors did not affect the verdict. See Vileenor v. State, 500 So.2d 713, 715 (Fla. 4th DCA 1987). Our review of the article reveals that it contains not only matters that were not testified about in court but also matters that could not have been properly raised before the jury. The article states that appellant “rejected a three-year plea offer, Weintraub said, because it was stiffer than those offered men like Iorizzo. Damski said the plea offered to Ferrante was 30 months and five years’ proba-tion_” Section 90.410, Florida Statutes, provides that “Evidence ... of an offer to plead guilty ... to the crime charged or any other crime is inadmissible in any civil or criminal proceeding. Evidence of statements made in connection with pleas or offers is inadmissible, except when such statements are offered in a prosecution under chapter 837.” Thus, the article clearly contained information not available to the jury through the testimony at trial. It has been stated that “[¡Information denied the jury in the courtroom due to its prejudicial nature is still prejudicial although it may reach the jury through news accounts.” United States v. Pomponio, 517 F.2d 460, 463 (4th Cir.), cert. denied, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975).
Moreover, at trial, defense counsel argued that appellant was innocent of any involvement in the alleged tax fraud scheme. The article, however, quoted defense counsel as saying appellant “was only involved peripherally,” thus contradicting the defense theory at trial and implicating appellant in the criminal acts.
In the instant case, the article was published only three days after trial had begun. The record discloses that defense counsel advised the trial court that the alternate jurors had notified her that the newspaper article had been read by the jurors and that it had been the subject of discussion among them (the jurors) every day. Additionally, the court was informed that one of the jurors had allegedly made up his mind regarding appellant’s guilt on the basis of the article’s contents.
HERSEY, C.J., concurs.
LETTS, J., dissents with opinion.