544 So.2d 1040 (1989)
Lucio John SALAS, Appellant,
v.
STATE of Florida, Appellee.
No. 87-1402.
District Court of Appeal of Florida, Fourth District.
May 17, 1989.
*1041 Richard L. Jorandby, Public Defender, and Jeffrey L. Anderson, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Amy Lynn Diem, Asst. Atty. Gen., West Palm Beach, for appellee.
DELL, Judge.
Lucio John Salas appeals his conviction and sentence for four counts of sexual battery, two counts of kidnapping and one count of burglary with intent to commit assault and battery.
The victim, while driving north on U.S. 1, observed an automobile driving slowly in front of her. She passed the car and continued northbound. The car she passed then gained speed and stayed behind her. While traveling on Indrio Road, the car she had passed overtook her vehicle and forced her off the road. The operator of the vehicle, later identified by the victim as the appellant, opened her car door, grabbed her hair with his right hand and her arm with his left hand, pulled her from the car and dragged her to the side of his car. The victim struggled and screamed. Appellant repeatedly slapped her across her face and temple while telling her to shut up. When she resisted his attempt to push her into his automobile, he slammed her head against the car. She stated that she blacked out but remembered being pulled off her knees by her hair and shoved into appellant's car. He pushed her down onto the floorboard of the vehicle and shoved her face into a changeholder located on the transmission hump. The victim, while being forced into the car, noticed a dent on the front passenger side of the vehicle. She described the vehicle as a middle-to-late 1970's model Chevrolet Impala or Caprice, off-white or of pale color, having four doors and vinyl bench seats. Appellant's wife testified that in December, 1984, appellant owned a 1980 Chevrolet Caprice, light gray in color, four doors with vinyl bench seats, a change holder and damage to the right front fender. She also testified that in 1984, appellant smoked Kool cigarettes.
Appellant proceeded west with the victim and asked her where she lived. He told her that he had a knife and that if she tried to get away, he would kill her. She recalled that appellant threatened several times to use a knife. Appellant turned off the paved road and stopped the vehicle in an orange grove. He told the victim that if she tried to run or didn't cooperate, he would cut her up and throw her in the canal where her children would find her. Appellant forced the victim to perform oral, vaginal and anal sex with him. He then told the victim to get a cigarette for him from the front dashboard. She noted that appellant smoked Kool cigarettes. *1042 When appellant finished smoking his cigarette, he again forced her to have vaginal sex. He told her to get dressed and then started the car, making the victim lie on the floor. He drove from the orange grove to the parking lot of a store where he stopped and asked the victim if the store was close to where she lived. He then told her that he was not going to take her home and drove to another wooded area where he told her to partially disrobe and again sexually assaulted her. He released the victim at an intersection in Lakewood Park and told her to forget him and he would forget her.
When the victim arrived at the hospital, she had pain in her eye, head and scalp area, pain through her nose, and pain that radiated down her cheek. This latter pain lasted for over a year from the time of the sexual assault. Physical examination revealed that the victim had a one-inch vaginal tear, injury to the cornea, and abrasions, dirt particles and semen in the vaginal and anal areas. Laboratory analysis of the vaginal and anal swabs confirmed the presence of seminal fluid containing blood group "A" secretions. Appellant had type "A" blood. The victim had type "O" blood. Laboratory analysis of hairs found on the victim's slacks confirmed the presence of pubic hair identical to specimens of pubic hair taken from appellant.
The victim identified appellant from a photographic lineup and during a live lineup conducted at the jail. She identified appellant in court as her assailant and stated she was "absolutely positive" and would "never forget it." A jury found appellant guilty of four counts of sexual battery, two counts of kidnapping and one count of burglary with intent to commit assault and battery.
Appellant contends that the trial court erred in denying his request to poll the jury to determine their exposure to a newspaper article published on the first day of trial which contained potentially prejudicial information; in failing to grant his motion for judgment of acquittal on the charges of kidnapping; in entering a judgment of conviction on the charge of burglary of a conveyance; in failing to grant a mistrial because the prosecutor commented on his right to remain silent; in failing to enter a judgment of acquittal on the four counts of sexual battery because the record does not contain sufficient evidence of force likely to cause serious personal injury or evidence of a threat to use a deadly weapon. Appellant also contends that the trial court failed to state valid reasons for departing from the sentencing guidelines.
Appellant first argues that he should have a new trial because the trial court failed to voir dire the jury to determine whether they had been exposed to a newspaper article that he claims contained information which, if disclosed to the jury, would have denied him a fair trial. At the commencement of the second day of trial, appellant's counsel requested the trial court to voir dire the jury concerning an article published on page 4A of the Vero Beach Press Journal which read in pertinent part,
Prosecutor Seeks Lifelong Sentence
A rapist already serving a life prison sentence went to trial Tuesday on additional rape charges after a prosecutor refused to make a plea bargain.
"This man must be put away forever," Assistant State Attorney Tom Walsh said of Lucio John Salas, 38, of St. Lucie County, who was sentenced to life in prison last October for the knifepoint rape of a woman, whose 4-year-old daughter watched the attack.
Tuesday, an Indian River County jury was selected to hear a second case against Salas that includes four counts of sexual battery with deadly force, two counts of kidnapping and burglary of a conveyance.
... .
"This is a classic case of a gross waste of taxpayers' money," Killer [appellant's attorney] said during a trial break, noting that his client might have accepted a plea bargain in the case, but none was offered.
Walsh said that under current gain time statutes, Salas will spend between seven and 15 years in prison on his life sentence. *1043 Walsh said Circuit Judge Rupert Smith refused the prosecutor's request to sentence Salas to 200 years in prison on top of the life term.
... .
Killer said he expects the trial to last until Monday, as Walsh will attempt to introduce Williams Rule evidence that will give jurors specific evidence about the defendant's past misconduct. Such evidence is generally not presented to jurors.
The victim is slated to testify sometime today in the trial presided over by Circuit Judge Dwight Geiger.
The trial court denied appellant's motion to voir dire the jury based upon the absence of any indication that any of the jurors had been exposed to the article. We find nothing in the record which indicates that any of the jurors violated the court's order prohibiting them from coming into contact with news coverage. The trial court gave the following preliminary instruction to the jury:
Further, you are not permitted to come into contact with any news media coverage of the trial and this, again, until you are finally excused as a juror. So do not read any newspaper articles or headlines about the trial. Do not listen to any news accounts on the radio or television or view any news accounts on the television, again, until you are finally excused as a juror.
In Robinson v. State, 438 So.2d 8 (Fla. 5th DCA), review denied, 438 So.2d 834 (Fla. 1983), the Fifth District Court of Appeal stated:
There do not appear to be any Florida cases addressing the procedure to be followed when a claim of potentially prejudicial publicity arises after the jury has been selected. However, numerous federal circuit courts of appeal and other state courts have considered the question and developed the following procedure. Initially, the trial court must determine whether the published material has the potential for prejudice. United States v. Perrotta, 553 F.2d 247 (1st Cir.1977); Commonwealth v. Jackson, 376 Mass. 790, 383 N.E.2d 835 (Mass. 1978); Brown v. State, 601 P.2d 221 (Alaska 1979); If it does, then a two-step process is necessary. First, the court should inquire of the jurors as to whether any of them read the material in question. If none of the jurors read the material, then its publication could not have prejudiced the defendant and the trial may proceed.

United States v. Carter, 602 F.2d 799 (7th Cir. 1979); United States v. Khoury, 539 F.2d 441 (5th Cir.1976). If any of the jurors indicate they have read the material, they must be questioned to determine the effect of the publicity, i.e., whether they can disregard what they read and render an impartial verdict based solely on the evidence at trial. See, e.g., Margoles v. United States, 407 F.2d 727 (7th Cir.1969). This procedure has been deemed necessary even though the trial court repeatedly admonished the jury, as here, regarding the reading of newspapers during the trial. (footnotes omitted).
Id. at 9.
This court approved the procedure outlined in Robinson in Kruse v. State, 483 So.2d 1383 (Fla. 4th DCA 1986), dismissed, 507 So.2d 588 (Fla. 1987). In Kruse, we held that the court erred when it refused to poll the jury to determine their exposure to two admittedly prejudicial and inaccurate media reports which referred to other charges pending against the defendant. We agreed with the holding in Robinson, "as applied to the facts here." Our review of the cases cited in Robinson, and cases decided after Robinson, satisfies us that a decision not to voir dire the jury upon notice of a potentially prejudicial article published during a pending trial does not constitute reversible error per se.
In United States v. Perrotta, 553 F.2d 247, 250 (1st Cir.1977), the court concluded that the trial court erred when it did not question the jury concerning a newspaper article prominently featured in the Springfield Daily News which characterized suppressed evidence as "extremely prejudicial" to the case of the defendants. The court noted that the trial judge stated, "`It is *1044 pretty hard for me to find that they have not seen it,' and it is a fact that the article was prominently displayed and it would have been hard for even a conscientious juror to overlook." Id. at 251. In United States v. Herring, 568 F.2d 1099 (5th Cir.1978), the circuit court of appeal concluded that the trial court erred when it failed to voir dire the jury concerning a front-page story with a banner headline that read, "Allman Under Heavy Guard." The opinion in Herring sets forth the procedure recommended by the ABA Standards Relating to Fair Trial and Free Press, section 3.5(f), (1968) when a jury may have been exposed to potentially prejudicial publicity. In Herring, the court found the trial court's instruction cautioning the jury to disregard anything they heard outside the courtroom inadequate.
Another relevant point lies in the nature of the trial judge's previous instructions on the matter. Has the court told the jury not merely to disregard but not to examine at all any external information on the case, especially that which appears in the news media? (emphasis added).
Id. at 1105.
We find it significant that after the decisions in Perrotta and Herring, the Fifth Circuit Court of Appeal in United States v. Ricardo, 619 F.2d 1124 (5th Cir.), cert. denied, 449 U.S. 1063, 101 S.Ct. 789, 66 L.Ed.2d 607 (1980), held that the trial court did not abuse its discretion in failing to voir dire the jury where "the trial received an inordinate amount of publicity" and certain articles related to facts and the convictions obtained in a former trial. The court held:
Appellants made no showing that they were actually prejudiced by the various accounts of the trial proceedings. Circulation statistics were not provided and the trial judge admonished the jury before the trial began not to seek or consider other sources of information. It is our conclusion that the trial judge properly exercised his discretion... . Juror exposure to news accounts about a particular trial or to information about a defendant's prior convictions does not presumptively deprive him of due process. Murphy v. Florida, 421 U.S. 794, 799, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975). This case did not contain the pervasive influence of the news media, and we are not persuaded by appellants' argument to the contrary. (footnotes omitted).
619 F.2d at 1131, 1132.
We conclude from the Fifth Circuit Court of Appeal opinions in Ricardo and United States v. Manzella, 782 F.2d 533 (5th Cir.), cert. denied, 476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986), that a trial court has discretion in making the decision to voir dire a jury based on the factual circumstances incidental to the publication. The trial court should consider matters such as the prominence of the newspaper article and the likelihood of the jury's contact with the article, the likelihood of the article's actual influence over the jury's decision-making, and finally, the content of the trial court's instruction prohibiting the jury from coming into contact with newspaper and other media coverage of the trial. In Manzella, the court stated:
Because this case is closer to Ricardo than to Herring on the facts, we affirm Provenzano's conviction despite the court's failure to voir dire the jury on December 12. Unquestionably, reference to his prior conviction is prejudicial, but we see the chances of its actual influence over the jury's decision-making as miniscule. The court had warned the jury against reading about the trial at least twice before December 12. While these warnings were not in the strongest terms imaginable, they nevertheless appear sufficient to impress upon the juror's minds the need to avoid media coverage. The December 12 article was no headline item of the Times-Picayune, although it did appear on the first page of an interior section. The inadmissible information  the prior conviction  again constituted one small paragraph at the end of the medium-length article.
Id. at 543.
In the case sub judice, the article in question appeared on page 4A of the *1045 Vero Beach Press Journal. The record does not disclose the circulation or area of coverage of the newspaper and nothing in the record indicates that any of the jurors read or had knowledge of the information contained in the article. The trial court gave a clear instruction prohibiting the jury from coming into contact with any news media coverage, and particularly emphasized that they were not to read any newspaper articles or headlines about the trial. A review of the complete trial record discloses such overwhelming evidence of appellant's guilt that we are satisfied that the article would not have had any influence over the jury's decision-making in this case. Therefore we hold that under the facts of this case, the trial court's decision not to voir dire the jury on the newspaper article did not constitute reversible error. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). However, notwithstanding our holding in this case, we again note that when a claim of potentially prejudicial publicity arises after a jury has been selected, the procedure set forth in Robinson v. State should be followed.
We find no merit in appellant's second point in which he contends that the trial court erred when it entered judgments of conviction for two counts of kidnapping. The state alleged the first kidnapping charge arose when appellant removed the victim from her car and transported her to the orange grove. The second charge arose when appellant took the victim to the second location to facilitate the commission of another sexual battery. We agree with the state's contention that appellant's acts constituted two separate and distinct kidnappings. Each asportation involved substantial movement of the victim from one location to another, neither was of the kind inherent in the nature of the acts of sexual battery, and each movement of the victim made the sexual batteries substantially easier to commit and substantially reduced the danger of detection. See Faison v. State, 426 So.2d 963 (Fla. 1983); Johnson v. State, 509 So.2d 1237 (Fla. 4th DCA 1987).
On appellant's third point, we hold that the information failed to allege the elements of the charge of burglary with intent to commit assault and battery. In a prosecution for burglary, it is not necessary for the state to allege intent to commit a specific offense, but the information must allege the essential statutory element of intent to commit an offense. Ellis v. State, 442 So.2d 213 (Fla. 1983); State v. Speights, 437 So.2d 1387 (Fla. 1983); State v. Waters, 436 So.2d 66 (Fla. 1983); State v. Fields, 390 So.2d 128 (Fla. 4th DCA 1980). Furthermore, the omission in the information of an essential element of the crime of burglary is a defect that can be raised for the first time on appeal. State v. Gray, 435 So.2d 816 (Fla. 1983). We therefore vacate appellant's conviction and sentence on the one count of burglary with intent to commit assault and battery.
We find no merit in appellant's fourth point on appeal concerning alleged prosecutorial misconduct. We hold that the prosecutor's comments did not rise to the level of harmful error. State v. Murray, 443 So.2d 955 (Fla. 1984).
We also find no merit in appellant's fifth point in which he contends that there was insufficient evidence to constitute life felonies of sexual battery pursuant to section 794.011, Florida Statutes (Supp. 1984). We hold that appellant's threats to cut the victim up and throw her in the canal, his slamming the victim's head against his car and his inflicting on the victim her other physical injuries justified the trial court's denial of appellant's motion for judgment of acquittal.
Finally, the trial court gave four reasons for its upward departure from the sentencing guidelines: great emotional and psychological trauma suffered by the victim; appellant's escalating pattern of criminal conduct; appellant's failure to rehabilitate himself; and the insufficiency of the sentence recommended by the guidelines scoresheet. We hold that the record demonstrates that the emotional and psychological trauma suffered by the victim satisfies the standard set forth in State v. Rousseau, 509 So.2d 281 (Fla. 1987). We also hold that the record supports the trial court's departure based upon the escalating pattern of criminal conduct. Here the record discloses not only a pattern of increasing criminal conduct, but also an increase in the nature and severity of the *1046 crimes. See Keys v. State, 500 So.2d 134 (Fla. 1986); Gales v. State, 515 So.2d 431 (Fla. 4th DCA 1987); Ballard v. State, 501 So.2d 1285 (Fla. 4th DCA), review denied, 488 So.2d 67 (Fla. 1986). We further hold that appellant's failure to rehabilitate himself constitutes a valid reason for departure. See Robinson v. State, 530 So.2d 1085 (Fla. 4th DCA 1988); McMillan v. State, 516 So.2d 1064 (Fla. 4th DCA 1987), review denied, 525 So.2d 879 (Fla. 1988); Allen v. State, 522 So.2d 850 (Fla. 4th DCA), review denied, 518 So.2d 1273 (Fla. 1987); and Leath v. State, 487 So.2d 384 (Fla. 4th DCA 1986). We acknowledge that these decisions conflict with the decisions rendered in Baker v. State, 493 So.2d 515 (Fla. 1st DCA 1986); Bradley v. State, 509 So.2d 1137 (Fla. 2d DCA 1987) and Washington v. State, 501 So.2d 133 (Fla. 2d DCA 1987). The trial court's departure based upon the insufficiency of the recommended guidelines sentence is not a valid reason for departure. However, we hold that in a case such as this, where the remaining reasons for departure are clear and convincing, "such a statement should be considered the trial court's written conclusion that the departure is necessary based on the valid reasons given in the departure order." See Scott v. State, 508 So.2d 335 (Fla. 1987); State v. Devine, 512 So.2d 1163 (Fla. 4th DCA), review denied, 519 So.2d 988 (Fla. 1987). Because we hold that all of the remaining reasons for departure are valid, we affirm the sentence imposed.
For the reasons stated, we affirm the judgments of conviction and sentences entered against appellant on the four counts of sexual battery and the two counts of kidnapping, but vacate appellant's conviction and sentence on the one count of burglary with intent to commit assault and battery.
AFFIRMED IN PART; REVERSED IN PART.
DOWNEY and LETTS, JJ., concur.