774 So.2d 896 (2001)
Antwan WAY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-3292.
District Court of Appeal of Florida, Fourth District.
January 3, 2001.
Rehearing Denied January 24, 2001.
Michael Salnick of the Law Offices of Michael Salnick, P.A., and Dea Abramschmitt, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
STONE, J.
We affirm Antwan Way's first-degree murder conviction, holding that the trial court did not abuse its discretion when it refused to inquire as to whether jurors had been exposed to mid-trial media coverage regarding the case, nor did error occur in the admission of evidence of Way's collateral bad acts.
Way's murder trial received advance publicity in both print and television media because of his four previous acquittals in other cases. In the articles, Way was *897 referred to as "Teflon Twan," an allusion to the fact that previous charges could not be made to "stick" to him. Way brought the pre-trial publicity to the attention of the trial judge at the outset of voir dire.
At that time, defense counsel stated that he would ask if any of the jury venire had heard of Way, or if they had read anything in the print media, or seen anything on television about him. He also requested individual voir dire. In response, the trial judge agreed that if anyone said that he or she had heard of the case, or were familiar with the name, or had read or seen anything about him, she would allow Way to question him or her individually. Way's attorney agreed to this approach.
During voir dire, the trial judge also stated:
I do need to inquire of all of you whether or not you had heard anything about this case.
This is what I want to know: Have any of you heard of Antwan Way?....
Have any of you seen or read anything about Mr. Way or this case in the paper or on television.
One venire person asked if Way had a nickname. Two prospective jurors indicated that they had heard of Mr. Way, and they were each individually questioned and excused.
At sidebar, defense counsel discussed asking the remaining jurors if they had heard of Teflon Twan or Teflon Don. The trial judge indicated that she would do so.
Again, the trial judge inquired of the panel as to whether they had heard of the case, asking them to search their memories. She further instructed, "If at some point during the questioning, you remember having heard something about this case, please let us know at that time, and we will bring you up here to question you individually."
Over the several days of trial, when the jurors were excused for lunch and for the evening, the judge reminded them that there would be publicity regarding the case and warned them not to read or watch any such reports. She further admonished them to have family members edit their newspapers to remove any possible articles referring to the defendant.
As the trial drew to a close, the parties gave their summations on a Friday afternoon. The trial judge decided to wait to instruct the jury until the following Monday. On excusing the jury for the weekend, the trial judge again warned them, "Be careful to avoid any media reports or media accounts of the case. It would be a shame to violate the oath that you took as jurors by mistake over this long weekend...."
Over the weekend, as anticipated, articles about the case appeared in two local newspapers of general circulation. One article was entitled, "`Teflon Twan' faces another verdict from another jury." The article mentioned Way's prior acquittals, some of the testimony heard at trial, and defense counsel's accusation that the state was prosecuting Way, "just because."
The other article was entitled, "Jealous Rage Led to Murder Lawyers [sic] says." It recounted snippets of the state and defense closing arguments, referenced Way's prior acquittals, and discussed the testimony that had been elicited in this trial.
Way requested that the trial judge inquire of the jury whether they had read or heard any of the accounts. The trial judge refused, stating that there was nothing to indicate that the jurors had not followed her warnings to avoid the media exposure on the case. Defense counsel agreed that he had no indication to the contrary but was merely being overly cautious.
Way also filed a motion for a post-verdict interview of jurors, asserting that the jurors' request to be escorted to their vehicles by armed guards indicated that they had been exposed to media publicity regarding him. The trial judge observed that this request was more than likely a by-product of the unruly spectators who *898 had crowded the courtroom every day, rather than any exposure to mid-trial publicity.
In Robinson v. State, 438 So.2d 8 (Fla. 5th DCA 1983), where the question of mid-trial publicity also arose, the court held
Initially, the trial court must determine whether the published material has the potential for prejudice. If it does, then a two-step process is necessary. First, the court should inquire of the jurors as to whether any of them read the material in question. If none of the jurors read the material, then its publication could not have prejudiced the defendant and the trial may proceed. If any of the jurors indicate they have read the material, they must be questioned to determine the effect of the publicity....This procedure has been deemed necessary even though the trial court has repeatedly admonished the jury ... regarding the reading of newspapers during the trial.
Robinson, 438 So.2d at 9 (citations omitted).
In Salas v. State, 544 So.2d 1040 (Fla. 4th DCA 1989), we acknowledged our previous approval of the procedure outlined in Robinson, but recognized that a decision not to voir dire the jury on potentially prejudicial news media is not per se reversible. See Salas, 544 So.2d at 1043.
Drawing from numerous federal decisions[1] addressing this issue, we concluded that in exercising its discretion to allow voir dire regarding publicity during trial, the court
should consider matters such as the prominence of the newspaper article and the likelihood of the jury's contact with the article, the likelihood of the article's actual influence over the jury's decision-making, and finally the content of the trial court's instruction prohibiting the jury from coming into contact with newspaper and other media coverage of the trial.
Salas, 544 So.2d at 1044.
In Salas, the news article appeared on an interior section of a newspaper, the record disclosed nothing to indicate that jurors had read the article, and the trial judge had given a clear instruction prohibiting the jury from contact with news coverage. Further, where the evidence at trial was such that it was unlikely that the article would have influenced the jury, the court held that the decision not to voir dire the jury on possible media exposure did not constitute reversible error. See id.
In this case, as in Salas, the print media articles did not receive prominence, both articles appearing in an interior page of the second section, the trial judge gave repeated and explicit instructions to avoid all media coverage and even suggested having family members pre-edit newspapers to avoid inadvertent exposure, and there was nothing to indicate exposure to the articles by the jurors. Furthermore, our review of the evidence indicates that it was unlikely that the newspaper articles would have influenced the jury.
We conclude that even though the trial court did not apply the Robinson procedures, it did not abuse its discretion in refusing to question the jurors mid-trial as to whether they had been exposed to the newspaper articles. Moreover, even if the trial court abused its discretion, the proof at trial was such that we find beyond a reasonable doubt that exposure to the media coverage would not have affected the outcome of the case.
Accordingly, we affirm as to this and all other points raised on appeal, including Way's claim that reversible error occurred in the admission of proof of his collateral bad acts. See Williamson v. State, 681 So.2d 688 (Fla.1996). As to the other individual voir dire issue raised, we find no *899 abuse of discretion and, in any event, the issue was not preserved. See § 924.051(1)(b) and (3), Fla.Stat. (1998); Green v. State, 679 So.2d 1294 (Fla. 4th DCA 1996); Lavin v. State, 754 So.2d 784 (Fla. 3d DCA 2000).
SHAHOOD and HAZOURI, JJ., concur.
NOTES
[1] See, e.g., United States v. Manzella, 782 F.2d 533 (5th Cir.1986); United States v. Ricardo, 619 F.2d 1124 (5th Cir.1980); United States v. Herring, 568 F.2d 1099 (5th Cir.1978); United States v. Perrotta, 553 F.2d 247 (1st Cir.1977).