# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### SPECIAL DECEMBER 1998 SESSION

FILED

January 29, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| vs. | ) | CCA No. 03C01-9811-CR-00410 |
| | ) | |
| THOMAS DEE HUSKEY, | ) | Knox County |
|     Appellee/Cross Appellant, | ) | |
| | ) | Hon. Richard Baumgartner, Judge |
| vs. | ) | |
| | ) | (Prior Restraint of Media) |
| THE KNOXVILLE NEWS-SENTINEL, | ) | |
|     Appellant/Cross Appellee. | ) | |

FOR THE APPELLANT:
**RICHARD L. HOLLOW**
**NATHAN D. ROWELL**
Attorneys at Law
P.O. Box 131
Knoxville, TN 37901-0131

FOR THE APPELLEE:
**HERBERT S. MONCIER**
Attorney at Law
Suite 775 NationsBank Center
550 Main Ave.
Knoxville, TN 37902

**GREGORY P. ISAACS**
Attorney at Law
One Centre Square
620 Market St., Ste. 280
Knoxville, TN 37902

FOR AMICUS CURIAE:
The Tennessean, The Tennessee
Press Association, The Society of
Professional Journalists and
The Middle Tennessee Chapter of
The Society for Professional
Journalists
**ALFRED H. KNIGHT**
Attorney at Law
215 Second Ave., North
Nashville, TN 37201

Memphis Publishing Company
**LUCIAN T. PERA**
**KATHY LAUGHTER LAIZURE**
**KIMBERLY D. BROWN**
Attorneys at Law
80 Monroe Ave., Ste. 700
Memphis, TN 38103-2467

**OPINION FILED:**_____

**APPEALS DISMISSED**

**JAMES CURWOOD WITT, JR., JUDGE**
                    <u>OPINION</u>

In this novel case, we are called upon to consider the competing interests of a media entity's rights under the First Amendment of the United States Constitution[1] and article I, section 19 of the Tennessee Constitution against a criminal defendant's due process rights to a fair trial under the Sixth Amendment of the federal constitution[2] and article I, section 9 of the state constitution. This case comes to us from the Knox County Criminal Court, which issued an order restraining The Knoxville News-Sentinel ("Sentinel") from publishing detailed records of court-appointed defense counsel's fees, experts and other expenses while the case of State v. Thomas Dee Huskey, a four-count capital prosecution, is pending. We granted Sentinel's application for permission to appeal and Huskey's application for cross appeal pursuant to Rule 10, Tennessee Rules of Appellate Procedure. The primary issue is whether the lower court's injunction is impermissible under the state and federal constitutions. In a cross-appeal, Huskey has raised several non-constitutional issues regarding the propriety of the injunction. Having heard and considered the oral arguments of counsel for Sentinel and Huskey and having reviewed the record which was filed on the day of argument, as supplemented, we dismiss as improvidently granted the Rule 10 appeals of both parties.

---

[1]"[T]he liberty of the press and of speech, is within the liberty safeguarded by the due process clause of the Fourteenth Amendment from invasion by state action." Nebraska Press Ass'n v. Stewart, 427 U.S. 539, 557, 96 S. Ct. 2791, 2801 (1976) (quoting Near v. Minnesota ex rel. Olson, 283 U.S. 697, 707, 51 S. Ct. 625, 628 (1931)).

[2]The Sixth Amendment guarantees defendants in federal criminal prosecutions "trial, by an impartial jury . . . ." The due process clause of the Fourteenth Amendment extends the right to jury trial for non-petty offenses to state criminal prosecutions. See Duncan v. Louisiana, 391 U.S. 145, 88 S. Ct. 1444 (1968).

## I. Facts and Procedural History

We begin with a recitation of the facts pertinent to this appeal.[3] Thomas Dee Huskey stands accused of four counts of capital murder. At the present time, he is on trial in the Knox County Criminal Court for his alleged crimes. The legal proceedings leading up to the trial have spanned several years and have received considerable media attention.

Huskey is indigent. Throughout these proceedings, he has been represented by two court-appointed attorneys, Herbert Moncier and Gregory Isaacs. Moncier and Isaacs have submitted documentation to the trial court and the Administrative Office of the Courts ("AOC") seeking payment from the state for their services and the services of experts. In earlier litigation, Sentinel sought to discover the amount of public funds expended for the defense of Huskey as reflected in counsel's detailed time records, which were ordered held under seal. The trial court and this court allowed Sentinel access to summaries of defense counsel's time records but denied it access to the detailed records. Knoxville News Sentinel v. Thomas Dee Huskey, No. 03C01-9708-CR-00331 (Tenn. Crim. App., Knoxville, Feb. 24, 1998), perm. app. denied (Tenn. 1998) ("Huskey I").

Despite the outcome of the earlier proceeding, Sentinel obtained from an undisclosed source copies of detailed time sheets of Attorneys Moncier and Isaacs for the years 1992 through 1995. John North, a reporter for Sentinel, claimed in deposition testimony that he received these records in approximately

---

[3]In setting forth the facts, this court has relied largely on the trial court's summary of events as recited in the transcript of the October 28, 1998 hearing. As pertinent to our factual summary, the trial court's recitation was undisputed by the parties.

May 1998.[4] He understood the origin of the records to be the Knox County Criminal Court Clerk's office.[5]

On October 1, 1998, counsel for Sentinel withdrew the record of the previous appeal from the archives of this court. Later that same day, according to the North deposition, Sentinel's attorneys and North discovered that the documents provided by the clerk of the appellate courts included detailed time records of defense counsel and other information pertaining to authorizations for expert services which were more extensive than the information which North had already received from his undisclosed source. North believed this information was "accidentally" provided, and the documents were returned to the court.[6]

On Thursday, October 22, 1998, North notified Moncier that he had the detailed time sheets from the undisclosed source. North advised Moncier that

[4]North's deposition was offered as an exhibit at the October 28, 1998 and November 4, 1998 hearings.

[5]In an affidavit contained in the appellate record, the Chief Deputy Clerk of the Knox County Criminal Court Clerk's office asserts that Moncier's records have always been under lock and key and "that Mr. Moncier's records were never copied and released by this office to anyone except the Administrative Office of the Courts in Nashville." The affiant concedes that for a time, Isaacs' records were in the public file, although they were later placed under lock and key. Further, the affiant claims that the records represented to her to be the ones from North's source were reduced in size, which is contrary to the procedure for copying documents in that office.

[6]Frankie Lewis, Clerk of the Tennessee Appellate Courts, declared in an affidavit that the documents "accidentally" provided to counsel for Sentinel were not a part of the appellate record. Rather, they had been delivered to her with a September 9, 1997 letter from the trial judge identifying the records as "copies of the motions, orders and fee petitions which have been filed with [the trial court] by the attorneys for Thomas Dee Huskey and placed under seal in the trial court." The letter requested that Lewis provide the records "to the Appellate Judges assigned to this appeal for their consideration." Lewis did not place the letter or documents in the appellate record; rather, she retained them in a locked file cabinet in her office until an appellate court judge assigned to the panel which considered the case requested them. After the panel made its decision, the documents and the appellate record were returned to the clerk's office together in one box, and this box was provided to Sentinel's counsel when it withdrew the appellate record.

4

Sentinel intended to publish an article about the information on October 25, 1998 and inquired whether Moncier would comment.

Moncier and Isaacs filed an application for temporary restraining order and injunction against Sentinel on Friday, October 23, 1998. They sought prohibition of publication of any information in the detailed time records and return of all copies of the time records in Sentinel's possession. The trial court entered a temporary restraining order prohibiting publication of information contained in the records. Based upon the belief the order was invalid on its face, Sentinel defied the trial court's order on Sunday, October 25, 1998 by publishing an article which utilized some of the information from the records.

On October 26, 1998, Sentinel moved to dissolve the temporary restraining order and to dismiss all proceedings challenging publication of the information obtained by Sentinel.

Thereafter, on October 28, 1998 and November 4, 1998, the trial court conducted hearings on Sentinel's motion to dissolve the temporary restraining order and on Huskey's motion to convert the temporary restraining order to a temporary injunction. After receiving evidence and hearing the arguments of counsel for Sentinel and Huskey, the trial court entered an order on November 4, 1998 enjoining Sentinel "from the publication or dissemination in any manner of any information contained in the detailed time records and/or from any other sealed documents which it gained access to through the review of the appellate court record." The order further required Sentinel to turn over all copies of "the sealed records" in its possession to Attorney Hollow for confidential safekeeping "until the conclusion of this case."

After we granted Sentinel's application for extraordinary appeal on December 16, 1998, we received an application from Huskey which challenged the injunction in four respects. The issues raised in Huskey's application are (1) whether the detailed time records are protected by attorney/client privilege, the work product doctrine, Rules of the Tennessee Supreme Court, or the Tennessee Rules of Criminal Procedure, (2) whether the trial court had original jurisdiction to hear evidence and make rulings with respect to the appellate court clerk's release of the detailed time records, (3) whether the trial court erred in denying Huskey's request for an injunction requiring Sentinel to return the detailed time records to Huskey's attorneys, and (4) whether the trial court erred in designating Hollow as custodian of the detailed time records in Sentinel's possession. Because these issues were closely intertwined with Sentinel's appellate issue, we granted Huskey's application.

This case presented a very unique situation in that the normal time frame for consideration of Sentinel's appeal would result in it losing a right it would not be able to recover in the event Sentinel's appeal was meritorious. Accordingly, we departed from the usual practice of receiving briefs and heard oral arguments on December 31, 1998.

## II. Record on Appeal

Due to the expedited nature of this appeal, assembly of the record on appeal has been somewhat anomalous. The record before this court includes:

(1) pleadings filed and order of the trial court relative to Sentinel's 1997 attempt to obtain access to sealed documents,
(2) pleadings filed and orders dated October 23, 1998 through November 4, 1998,[7]
(3) transcripts and exhibits from the hearings on the temporary injunction from October 28, 1998 and

_____

[7]These filings include the affidavit of Frankie Lewis.

6

November 4, 1998,[8]

    (4)      pleadings filed in the trial court after the temporary injunction was entered on November 4, 1998,

    (5)      transcripts of the hearings on a motion to dismiss on December 1, 1998 and December 3, 1998,

    (6)      motions, affidavits, order, and other pleadings filed in 1996 relative to entomological evidence and discovery,

    (7)      sentencing memoranda filed in 1995 and 1996, and

    (8)      motions filed in 1996 relative to the disclosure of information about the defendant's mental health records and statement during mental health evaluation.

Obviously, our review of the record is guided by our determination of which portions of the record are relevant to the issues presented. Because the heart of this case is the propriety of the temporary injunction, the pleadings and orders filed from October 23, 1998 through November 4, 1998, as well as the transcripts and exhibits from the hearings on October 28, 1998 and November 4, 1998 are of paramount importance. The earlier filings and orders of the trial court are relevant to establish the background leading up to the present appeal. At the October 28, 1998 hearing, the trial court took judicial notice of the prior proceedings in the case; however, our knowledge of prior proceedings is limited to the filings actually preserved in the appellate record.

On the other hand, we deem anything filed after the trial court entered the temporary injunction on November 4, 1998 not relevant to this appeal. See Nebraska Press Ass'n v. Stewart, 427 U.S. 539, 562, 96 S. Ct. 2791, 2804 (1976) (appellate court must "examine the evidence before the trial judge when the order was entered" to determine propriety of prior restraint). Accordingly, we have not considered the parties' filings after entry of the order on November 4, 1998 and the

_____

[8]The exhibits received at these hearings that were initially filed with this court are (1) pages 1 through 31 of North's deposition, (2) Section A of the October 25, 1998 Knoxville News Sentinel, and (3) copies of Sentinel's Motion to Withdraw Records from the Archives of the Court and Presiding Judge Gary Wade's Order allowing the withdrawal. As discussed below, the court later received pages 32 through 45 of North's deposition under seal.

transcripts of the December 1 and 3, 1998 hearings.

Notably, the record on appeal, which has been designated by the parties pursuant to Tennessee Rule of Appellate Procedure 24(a), does not include the detailed time sheets which Sentinel obtained from North's source and which were the basis for the October 25, 1998 article it published.

Following oral argument, the court determined that the deposition of John North had been filed as an evidentiary exhibit to the October 28, 1998 and November 4, 1998 hearings. The deposition was filed in two parts -- pages 1 through 31 were filed as exhibit 1, and the remainder of the deposition was filed as exhibit 5. Exhibit 5 was placed under seal by the trial court. Moreover, exhibit 5 was not transmitted by the trial court clerk with the appellate record. On review of the first 31 pages of the North deposition, it was apparent that the detailed time records North received from the source were made an exhibit to the deposition. We determined that the remainder of the deposition and the documentary exhibit to the deposition were necessary in order to "convey a fair, accurate and complete account of what transpired" in the trial court. See Tenn. R. App. P. 24(a). As such, we entered an order compelling the trial court clerk to transmit exhibit 5 to the appellate court clerk. The trial court clerk promptly complied by providing us with exhibit 5 and the trial court's order sealing that exhibit. Upon review of exhibit 5, we discovered that the detailed time records, although an exhibit to the North deposition, were not contained therein. On review of the trial court's order sealing exhibit 5, it became apparent that the trial court had not received the detailed time records as part of the filed deposition as we originally inferred from the record.[9] See

_____

[9]The transcript of the November 4, 1998 hearing reflects that the trial court ordered "the balance of it [the North deposition]" would be filed under seal. However, the written order reflects that pages 32 through 45 of the North deposition are sealed. There is no mention of any exhibits to the deposition.

8

Tenn. R. App. P. 24(a) (unless designated by a party, depositions and other discovery materials are not included in record on appeal).

We declined to order any further supplementation. Although the trial court has recited that it is familiar with Huskey's lawyers' time sheets and although the record in the trial court may contain some, if not all, of such time sheets, the time sheets at issue in this case are the time sheets North received in May 1998. North's deposition reflects that both parties had copies of the time sheets, which they agreed to keep in their possession rather than surrendering them to the court reporter to be maintained with the deposition transcript, despite Huskey's counsel identifying them at the deposition as "exhibit number 1" to the deposition.[10] In light of the parties' deliberate abridgement of the record and this court's unfulfilled attempt to supplement the record, we declined to initiate further steps to construct a record that we would consider to be "fair, accurate and complete." Tenn. R. App. P. 24(a).[11]

---

[10]In North's deposition, the documents from the undisclosed source are designated as an exhibit to the deponent's testimony, but counsel for Huskey proposed, "[L]et's all agree that we are going to keep the exhibits in our private possession. I don't mean to make . . . them part of the public record any more than they have already been made." Counsel for Sentinel agreed. While we understand Huskey's counsel's concern for keeping the records private, we do not understand why there was no request that the deposition exhibit be received by the trial court under seal along with pages 32 through 45 of the deposition transcript.

[11]Indeed without one of the parties filing the detailed time sheets in the trial court as an exhibit to North's deposition, there appears little else we can do to create a record complete enough to allow our consideration of this appeal on the merits. This Court cannot, pursuant to Tenn. R. App. P. 24(e), order supplementation of the appellate record with material that is not otherwise properly includable in the record.

Neither party filed the detailed time sheets in this appeal of the corollary proceeding to the criminal prosecution. In addition the time sheets do not appear to be part of the record in the criminal prosecution itself. Once these documents are sent to the Administrative Office of the Courts the trial court clerk has no control over them. (See Affidavit of Chief Deputy Clerk of the Knox Co. Criminal Court). These detailed time sheets are confidential administrative records of the court system's indigent defense payment system rather than

## III. Prior Restraint

This case involves two of the rights our state and federal constitutional framers held in highest regard -- freedom of the press and the right of an accused to a fair trial. On the one hand, freedom of the press is guaranteed by the First Amendment to the United States Constitution and article I, section 19 of the Tennessee Constitution. On the other hand, a criminal defendant's right to a fair trial is guaranteed by the federal Sixth Amendment and article I, section 9 of our state constitution.

The framers of the federal and state constitutions did not establish a hierarchy for the enforcement of the rights of the press and rights of the criminal defendant in the case of competing interests. When the United States Supreme Court has been presented with the opportunity to consider these two rights in competition with one another, it has specifically declined to impose a per se rule of priority. See Nebraska Press, 427 U.S. at 561, 96 S. Ct. at 2804.

That said, the United States Supreme Court has recognized that the First Amendment freedom is fundamental to our society. New York Times v. Sullivan, 376 U.S. 254, 269, 84 S. Ct. 710, 720 (1964). Moreover, the court has recognized the main purpose of the First Amendment to be prevention of prior restraints on publications. Patterson v. Colorado ex rel. Att'y General, 205 U.S. 454, 462, 27 S. Ct. 556, 558 (1907) (citation omitted). The court has characterized so-called "prior restraints" as "the most serious and the least tolerable infringement on First Amendment Rights." Nebraska Press, 427 U.S. at 559, 96 S. Ct. at 2803. The Tennessee Supreme Court has said that article I, section 19 of the state constitution affords protection which is "at least as broad" as the First Amendment. Leech v.

substantative records in the criminal case. Indeed, in Huskey the trial judge had to request return of detailed time sheets from A.O.C.

American Booksellers, 582 S.W.2d 738 (Tenn. 1979).

The other side of the coin is that the United States Supreme Court has opined that the right of a defendant to a fair trial is "the most fundamental of all freedoms -- [which] must be maintained at all costs." Estes v. Texas, 381 U.S. 532, 540 85 S. Ct. 1628, 1632 (1965); see also Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 508, 104 S. Ct. 819, 823 (1984) ("No right ranks higher than the right of an accused to a fair trial."); Shepherd v. Florida, 341 U.S. 50, 53, 71 S. Ct. 549, 550 (1951) (concurring opinion of Jackson and Frankfurter, JJ.) ("Newspapers, in the enjoyment of their constitutional rights, may not deprive accused persons of their right to fair trial.").  Further, in the context of a capital prosecution, the high court has said that a defendant facing the prospect of the ultimate penalty of death is entitled to heightened due process protection. Woodson v. North Carolina, 428 U.S. 280, 305, 96 S. Ct. 2978, 2991 (1976).  In the present case, Huskey argues that the detailed time sheets contain defense secrets which otherwise would not be discoverable under Tennessee Rule of Criminal Procedure 16(b).

The United States Supreme Court has said that where the Sixth Amendment rights of an individual accused of a crime are in conflict with the First Amendment rights of a media entity, the court must consider "(a) the nature and extent of pretrial news coverage; (b) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and (c) how effectively a restraining order would operate to prevent the threatened danger." Nebraska Press, 427 U.S. at 562, 96 S. Ct. at 2804.  The precise terms of the restraining order bear careful consideration, as does the extent to which the record supports the imposition of the extraordinary entry of a prior restraint on publication. Nebraska Press, 427 U.S. at 562, 96 S. Ct. at 2804.

11

In Huskey I, this court recognized the right of Sentinel to have access to and to publish information from the summary pages of the time sheets. At the present juncture, we feel compelled to express our concern for the rights and abilities of this and other indigent criminal defendants to be represented by counsel and to receive compensation for the individuals who provide them with legal and other expert services without nondiscoverable information being made public via the First Amendment. In support of its order in Huskey I, the trial court found that the forms approved by AOC for use by counsel in submitting claims for fees and expenses required detailed and specific information. See Tenn. R. Sup. Ct. 13, § 6(a). The court noted that the AOC's forms required counsel to set forth "the nature of the work that is performed, the individuals that are interviewed and consulted, the investigative and research efforts that have been made, along with the dates these services were rendered and the amount of time spent on each activity." (Emphasis added.) The trial court also referred to the information defense counsel must submit in order to obtain the trial court's authorization for payment for expert services. See Tenn. R. Sup. Ct. 13, § 5(b). The trial court in Huskey I found that "unrestrained public access to such information before trial could be an unacceptable invasion of a defendant's constitutional right to a fair and impartial trial." We agree that the disclosure of information that could be contained in defense counsel's application for fees, expenses and authorizations could impermissibly impair a defendant's right to a fair trial. Moreover, we are concerned that the procedure mandated in Supreme Court Rule 13 for claiming and approving compensation and fees in cases of indigency may imperil the right to a fair trial only for indigent defendants.

Rule of Criminal Procedure 16(b) provides for the disclosure of certain defense information to the prosecution, including, under the proper preliminary circumstances, "any results or reports of physical or mental examinations and of

12

scientific tests or experiments," but only when "the defendant intends to introduce [them] as evidence in chief at trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to the witness' testimony." Tenn. R. Crim. App. 16(b)(1)(B). A request for authorization for expert services under Supreme Court Rule 13, section 5 might include services which are not intended to result in trial evidence or testimony, such as in the case of a mere consultation. A consultation or investigative-type conversation might also be divulged on an attorney fee claim form through the itemization of the time spent by counsel. Evidence of such consultations, even though it may not be discoverable under Rule of Criminal Procedure 16, might be nevertheless "discovered" through publication that is based upon the assertion of First Amendment rights. To the extent that Rule 13 creates the procedure by which this disclosure or "discovery" could occur, it is a risk visited only upon indigent defendants.

Our concern about this issue is not squarely addressed by Sentinel. In Nebraska Press and in other cases cited by Sentinel, the court was faced with the challenge of rampant pretrial publicity that might influence potential jurors. See, e.g., Hunt v. NBC, 872 F.2d 289 (9th Cir. 1989); Joseph Lyle Menendez v. Fox Broad. Co., 22 Media L. Rep. (BNA) 1702, No. 94 2339 R (C.D. Cal. Apr. 19, 1994). In Nebraska Press, the Supreme Court indicated that there are various alternatives for dealing with pretrial publicity and that prior restraint is essentially a last resort. In the present case, however, the public impact of pretrial publicity does not appear to be the primary evil. Rather, this case presents a different concern--that of prejudice to the dynamics of the defense via the prosecution gaining otherwise nondiscoverable information. In this situation, less restrictive alternatives--other than sealing the records involved--are not as apparent. See State Record Co. v. South Carolina, 322 S.C. 346, ---, 504 S.E.2d 592, 597-95 (S.C. 1997) (prior restraint of publication of surreptitiously recorded conversation between capital

13

defendant and his attorney upheld, based not only upon the threat of pretrial publicity to defendant's right to a fair trial, but also upon jeopardy to defendant's right to effective assistance of counsel) (Toal, J., concurring and dissenting), pet. for cert. filed (U.S. Dec. 23, 1998). Accordingly, we anticipated a heightened vigilance for the indigent criminal defendant's rights in the case before us, provided the peril to those rights is readily apparent from the proof of record.

Obviously, any analysis of the constitutional rights of Huskey as juxtaposed to the constitutional rights of Sentinel must include an understanding of the precise nature and extent of the threat to Huskey's rights. In this case, the nature and extent of this threat can only be determined upon an examination of the detailed time sheets--the very materials that Sentinel has been restrained from publishing and which serve as the basis for Huskey's claims of risk. Nevertheless, we are amazed to find that the record on appeal, even as supplemented by this court's order, contains no detailed time sheets nor any portion of such documents. Despite Huskey's protestations, which may be well-founded, we do not know what the detailed time sheets contain. Consequently, we are unable to review the constitutionality of the prior restraint on its merits. Neither are we able to review the merits of Huskey's appellate issues.

To illustrate the futility of any attempt to resolve this case, we point out that we could not determine any precise contours for an injunction, were we to conclude that a narrowly drawn restraint was justified. The lack of the pertinent detailed time records denies this court any basis for a surgical order that might serve to protect the worthy constitutional interests of both parties. Without the specific records, any such order would have to be generalized, such as to ban the publication of any information that would not be discoverable by the state under Rule of Criminal Procedure 16(b). Obviously, such an order would be unsatisfactory

14

and would invite subsequent, if not successive, rounds of litigation prompted by disagreements as to whether specific data fall within the scope of Rule 16(B).

## IV. Conclusion

When we granted the parties' applications for Rule 10 extraordinary appellate review, we anticipated being called upon to address vital constitutional issues based upon a review of the actual detailed time records which Sentinel is prohibited from publishing and which form the basis for Huskey's claims that a fair criminal trial is jeopardized. These records are not only central to the case, they _are_ the case. Yet, upon reviewing the appellate record as constituted by the parties via Rule of Appellate Procedure 24(a), substantial portions of which were filed on the day of oral argument before this court, we find the necessary time records are absent. During oral argument, we implored the parties to give careful attention to the record, and we asked that immediately after argument counsel take the opportunity to examine the transcript and transcript exhibits filed that morning. We made an attempt to have the record supplemented in a way that we anticipated would bring the necessary records from North's source into the record through the trial court record. We were frustrated in this attempt.

We are unable to adjudicate important constitutional rights which are determined by the contents of documents which are not before us.[12] See Nebraska

---

[12]In New York Times Co. v. United States, 403 U.S. 713, 91 S. Ct. 2140 (1971) ("The Pentagon Papers Cases"), the government sought a prior restraint against media entities which had obtained sensitive documents related to the Viet Nam War. The Supreme Court had the documents before it and reviewed them prior to making its ruling. See, e.g., New York Times, 403 U.S. at 722-23, n.3, 91 S. Ct. at 2145-46, n.3 (concurring opinion of Douglas and Black, JJ.) ("I have gone over the material listed in the in camera brief of the United States."); New York Times, 403 U.S. at 731, 91 S. Ct. at 2150 (concurring opinion of White and Stewart, JJ.) ("[A]fter examining the materials the Government characterizes as the most sensitive and destructive . . . ."). Just as the Supreme Court was afforded the opportunity to review the documents over which prior restraint was sought in The Pentagon Papers Cases, we must have the same opportunity

Press, 427 U.S. at 562, 96 S. Ct. at 2804 (careful consideration should be given to extent to which record supports the extraordinary imposition of a prior restraint on publication). Accordingly, we conclude that the Rule 10 appeals of both parties were improvidently granted, and the same are hereby dismissed. See Diana Walker Lynch v. Charles Drew Lynch, No. 02A01-9405-CV-00126 (Tenn. Ct. App., Western Section, Dec. 14, 1995) (opinion and order).

 

_____
JAMES CURWOOD WITT, JR., JUDGE

 

_____
JERRY L. SMITH, JUDGE

 

_____
NORMA McGEE OGLE, JUDGE

---

before we are able to consider whether First Amendment rights may be curtailed in the name of protecting a competing vital interest. In the absence of the documents, we are unable to adjudicate the issues presented in the parties' Rule 10 appeals.